GEORGE P. KEITER AND OTHERS v.
LAURITZ L. BERGE, ETC.[1]

March 9, 1945.

No. 33,914.

[1]Reported in 18 N. W. (2d) 35.

*Henry Nycklemoe,* for appellant.
*Dell & Rosengren,* for respondents.

PETERSON, JUSTICE.

There are numerous assignments of error, but only those merit discussion which raise the question whether the evidence sustains a finding that a road known as old road A was established by dedication.

The road extends over land in Otter Tail county of which defendant's father became the owner in 1879 and which defendant bought from him in 1900. The tract comprises the SW¼ of SW¼ of section four and certain government lots lying to the east thereof. The eastern part of the tract forms a point abutting on Wall Lake with shore line on the north and east sides. For many years, as we shall point out presently, the point was resorted to by the public for purposes of fishing, bathing, picnicking, and other forms of recreation. In gaining access to the point, the public traveled from a public road on the west side of section four over a cartway extending from the southwest section corner in a northeasterly direction past the farm buildings and house and between a slough and a gravel pit. Just beyond the slough and gravel pit, the road swung so as to extend more northerly than it did over its prior course. In 1909, defendant platted the land comprising the point so as to have one row of lots facing the lake on the north and two

rows facing it on the east. The plat shows an alley between the two rows of lots facing east and along the south side of the lots facing north. The plat did not show any road or other way for access from the point to the public road on the west side of section four. Defendant testified that the reason for the omission was that the cartway, which he referred to as a trail, was being used by the public as a way. The eastern terminus of the cartway was the alley at a point approximately opposite the middle east-facing lots.

Some time between 1922 and 1929, the exact time of which is not important, some of the owners of the north-facing lots commenced to travel with defendant's consent and encouragement along a trail which is now a road referred to as new road B and which begins at a point in the alley opposite the third north-facing lot from the west. It extends southwesterly to join the old cartway at a point east of the slough and gravel pit. In 1928, defendant closed that part of the old cartway extending from the section corner past his house and farm buildings to the point where it was joined by new road B. At the same time he constructed a new road, called the new south road, to take its place. This road extends from the section corner easterly along the south line of the section to a point south of the gravel pit where it turns northeast to join the old cartway at its junction with new road B. At a point east of the section corner he installed a gate, the importance of which will be referred to later. In 1942, defendant constructed a fence across the portion of the old cartway called old road A, extending from the junction of new road B and the new south road to the point on the lake. The distance between the termini of old road A and new road B, where they connect with the alley running through the platted portion of the point, is about a quarter of a mile. Travel to the east-facing lots would be increased by that distance if it were over new road B and the alley. This action was brought to enjoin defendant from obstructing old road A by maintaining the fence or in any other manner.

At the trial it was stipulated that defendant had dedicated new road B and the new south road as public highways. The only question remaining for decision was whether old road A was a public highway in virtue of a claimed dedication thereof by defendant or his father or by both of them. The court found that old road A had been established as a cartway by dedication.

The evidence was conflicting. Adopting a view reasonably favorable to the finding, the testimony of numerous witnesses, who had been familiar with the road for periods estimated at from 20 to 60 years, showed that old road A followed a well-defined trail or route along a ridge; that it was always passable; that it had been in that condition without any gate or fence for periods estimated at from 15 to 31 years prior to the trial; that extensive use was made of it prior to 1909 by the public in traveling to the point for purposes of fishing, bathing, picnicking, and other recreation and, after 1909, by the public for the purposes mentioned and by lot owners and their guests in going back and forth; that the traffic was of such volume that, because of the "noise" and "trouble" incident to it, defendant established the new south road to divert the travel from his residence; that the private lot owners improved the road with defendant's knowledge by graveling it; that defendant in cultivating his field on both sides of the road avoided injury to it by lifting his plow across it; and that in 1928 he arranged with one of the witnesses to deposit gravel on the road to be paid for and spread by the lot owners. No public funds had been expended for improving or maintaining the road. After the first lot was sold in 1911, the lot owners caused improvements to be made on their lots estimated to exceed $30,000 in value.

After new road B was constructed, some of the cottage owners at the west end of the north-facing lots and their guests traveled over that road to reach the point. Those who wanted to reach the east-facing lots and some of the easterly north-facing lots continued to use old road A. The reason given was that it was a direct route and that there were mudholes behind the north-facing lots which made the alley, over which they would have to travel from new

road B, impassable. The net effect of the construction of new road B was to divert some traffic to that road, but not all of it.

■ Defendant contends that, since the eastern terminus of the cartway, of which old road A was a part, was on his private land prior to the platting and afterward in the alley which served only the lots on the point, the road in question was a cul-de-sac and as such incapable of dedication. Assuming that it was a cul-de-sac, the contention is without merit. A way may be dedicated as a public highway even though it is a cul-de-sac. City of Mankato v. Warren, 20 Minn. 128 (144), (common-law dedication) ; Hanson v. Eastman, 21 Minn. 509 (statutory dedication). In some of our later cases it was assumed as a matter of course that a road closed at one end could be established by dedication. See, Metalak v. Rasmussen, 184 Minn. 260, 238 N. W. 478; Carpenter v. Gantzer, 164 Minn. 105, 204 N. W. 550.

■ A common-law dedication is accomplished otherwise than by a plat executed and recorded as required by statute. See, 2 Dunnell, Dig. & Supp. § 2628. A dedication consists of the owner's assent to the appropriation of his property to a public use and acceptance thereof by the public. Dedication is a question of intention. The owner must intend to devote the land to a public use. The owner's intent may be express or implied, but it must appear clearly and unequivocally. Here, the evidence does not show an express intent to dedicate, but it permits a clear and unequivocal inference of such intention. Intention to dedicate may be inferred from the owner's long acquiescence in the public use of the land, Metalak v. Rasmussen, 184 Minn. 260, 238 N. W. 478; from the owner's acts in furtherance of such use, St. P. M. & M. Ry. Co. v. City of Minneapolis, 44 Minn. 149, 46 N. W. 324; from the owner's recognition of a need for the highway in question, Morse v. Zeize, 34 Minn. 35, 24 N. W. 287; and from his recognition of the validity of the public's claim to the highway after it was used as such. Still v. Lovelady, 218 Ala. 19, 117 So. 481. Here, the evidence permits an inference to support an affirmative finding of all the grounds mentioned. The evidence shows that defendant, and his father be-

fore him, acquiesced in the use of the cartway for about 60 years. This was long acquiescence by any standard. It shows that defendant in cultivating his fields protected the cartway against damage by lifting his plow across it. His arranging to have gravel put on the road to be used in improving it and fitting it for travel was an act in furtherance of such public use. Gillman v. Town of Bloomfield, 78 N. J. L. 67, 73 A. 604. He recognized the validity of the public's claim to the roadway by constructing the new south road as a substitute for the part of the cartway extending from the section corner past his house and farm buildings when he closed that part of the cartway for public travel. Still v. Love-lady, *supra*.

Some point is made that defendant interrupted the public use by installing a gate on the new south road in 1928 and that there was no adverse use for the period of the statute of limitations between that date and the time of trial. Aside from the point that the evidence relative to the gate was ruled out, the argument is without merit. A dedication rests upon assent and not upon prescription. It may be and often is made instanter. It does not depend upon the length of time the road was used for public purposes. The time element is important only where, as here, the fact of dedication rests upon inference. The inference of dedication is more readily permissible where the public use has been long and continued, but the public use need not be for the period of the statute of limitations. All that is required is that the circumstances be such as to permit the inference clearly and unequivocally. Case v. Favier, 12 Minn. 48 (89); Village of White Bear v. Stewart, 40 Minn. 284, 41 N. W. 1045.

Acceptance of a dedication by the public may be shown by user by the public, as by travel, or by acts of public officers in improving and maintaining the highway. Town of Lake View v. LeBahn, 120 Ill. 92, 9 N. E. 269. Either will suffice. It is not essential to show that public funds were expended to improve or maintain the road. Dickinson v. Ruble, 211 Minn. 373, 1 N. W. (2d) 373; Carpenter v. Gantzer, 164 Minn. 109, 204 N. W. 552, *supra*. Common

user by the public "is the very highest kind of evidence" of public acceptance of a dedication. Morse v. Zeize, 34 Minn. 37, 24 N. W. 288, *supra*.

Where, as here, the evidence is in conflict relating to such questions as to whether the owner intended to dedicate and whether the public accepted the dedication, the ultimate question of dedication is peculiarly one for the finder of fact. Morse v. Zeize, *supra*. The finding of dedication here is sustained by the evidence.

■ Defendant contends that any rights which the public had in old road A were divested by his dedication of new road B. The argument assumes that a dedicator of a road may revoke the dedication by substituting a new road for an old one. This cannot be done without the consent of the public. After acceptance by the public, a dedication is irrevocable by the act of the dedicator. By the act of dedication the public acquires vested rights which can be divested only with its consent or by operation of law. Doyle v. Babcock, 182 Minn. 556, 235 N. W. 18; Baker v. City of St. Paul, 8 Minn. 436 (491). Here, there was no public consent to the substitution of new road B for old road A. No governmental authority gave such a consent. The lot owners, their guests, and the public continued to use old road A the same as they had done before the dedication of new road B. So far as they were concerned, there was no consent. Since there was no consent to the revocation of the dedication of old road A, it continued to be a public road. Kelroy v. City of Clear Lake, 232 Iowa 161, 5 N. W. (2d) 12; Larned v. Larned, 11 Metc. (52 Mass.) 421; Schurtz v. Wescott, 286 Mich. 691, 282 N. W. 870.

■ A subsidiary question is presented relative to a ruling below excluding certain evidence offered by defendant relative to a gate on the new south road. There was no exception and no motion for a new trial. The appeal is from the judgment.

"* * * Where no exception is taken to a ruling excluding evidence and no motion for a new trial is made, the ruling is not

reviewable on an appeal from the judgment." Stevens v. Minneapolis F. D. Relief Assn. 219 Minn. 276, 286, 17 N. W. (2d) 642, 648.

Affirmed.

