WALTER F. MUELLER v. ALBERT DROBNY AND OTHERS.[1]

January 16, 1948.

No. 34,529.

[1]Reported in 31 N. W. (2d) 40.

*F. L. & E. V. Cliff,* for appellants.

*N. F. Soderberg,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Plaintiff is the owner of the E½ NE¼ of section 2, township 120, range 46, Lac qui Parle county, hereinafter referred to as the east 80. He also owns the SW¼ NW¼ of section 1, adjoining it on the east, upon which his farm buildings are located. Defendant Manford O. Erdahl is the owner of the adjoining W½ NE¼ of section 2, hereinafter referred to as the west 80, and the NE¼ NW¼ of section 2, same township and range. His farm buildings are located on the west 80.

For some years past, Erdahl and his predecessors in ownership of the west 80 have driven their vehicles, farm implements, and equipment on and have otherwise used a roadway on a portion of plaintiff's east 80 as a means of ingress to and egress from the west 80 and the adjoining land. Shortly prior to the commencement of this action, Erdahl, claiming the right to the continued use of such roadway as a public highway, requested the supervisors of the township of Yellow Bank (the other defendants herein) to make improvements thereon. Plaintiff thereupon blocked it and advised defendants that it was not a public highway and that the land over which it passed was his private property. Shortly thereafter, he commenced this action to enjoin the township of Yellow Bank, its supervisors, individually and officially, and Erdahl from (1) laying out or constructing a public road over his land; (2) using any part of it for such purpose; or (3) taking down or destroying the fence which he had constructed thereon.

On December 30, 1946, following the trial, the district court made its findings, conclusions, and order for judgment, determining that no public highway existed over or upon plaintiff's east 80, by dedication or otherwise, and enjoining defendants from entering thereon for the purpose of repairing, or constructing any public road across such property without plaintiff's express consent. Defendants' sub-

sequent motion for amended findings or a new trial was denied, and this appeal followed.

On appeal, defendants contend (1) that the evidence required a finding that the roadway extending across the east 80 beginning at the southeast corner of the NE¼ NE¼ of section 2 and extending in a northwesterly direction to a point approximately 600 feet south of the northwest corner of said quarter is a public highway by common-law dedication; and (2) that the trial court erred in overruling defendants' objections to certain questions directed to plaintiff, as hereinafter set forth.

The evidence submitted established that since 1878 a roadway has extended across plaintiff's east 80 and thence west from the west boundary thereof across the north part of the west 80; thence west and southwest to the southeast corner of the NE¼ NE¼ of section 3, where it connects with a public road located on the 40 line, and that ultimately it joins a public highway running west to Big Stone City, South Dakota, and Ortonville, Minnesota, to the west. Subsequent to the bridging of the Minnesota River, the road for a number of years was the principal highway to the village of Odessa, Minnesota, which is east of Erdahl's premises.

Plaintiff's father purchased the east 80 in 1897, at the same time acquiring the SW¼ NW¼ of section 1 adjoining it on the east. He resided thereon until his death in 1925. Subsequent to his death, plaintiff's mother owned and occupied the premises until 1937. Thereafter title remained in her estate until 1941, since which time plaintiff has been the owner thereof.

It is not disputed that when plaintiff's father first moved onto the premises the roadway across the east and west 80's was in existence and was used by the general public, as well as the occupants of the farm now owned by Erdahl. Originally, as it crossed plaintiff's property, the road was somewhat south of its present location, on higher ground. It was gradually moved northward by the cultivation of the land and the building of fences. Since 1917, its location across plaintiff's property has remained the same. The lane of travel over a small portion of it has varied during wet periods,

when it became impassable and plaintiff permitted travel through his pasture and fields on the higher ground to the south, maintaining a gate for such temporary diversion. It has been the only road east out of the Erdahl farm since 1878. The part of the east 80 over which it extends consists of high ground in the south portion, from which the land slopes downward north to the Minnesota River bottoms. The land has been used principally for hay and pasture, only a small portion of it being cultivated.

Up to 1921, plaintiff's father also owned a quarter section of land in South Dakota, and plaintiff, his father, and others traveled west over the roadway from their farm and beyond, through the farm now owned by Erdahl, to work their South Dakota land. Since 1921 and as recently as 1945, plaintiff has transported his threshing machine over it to thresh on farms west of the Erdahl farm, likewise passing through the Erdahl farm in connection therewith.

Erdahl first acquired title to his farm in 1934. He has resided thereon since 1935. Prior thereto and since 1897, it has been owned and occupied by the parents of Mrs. Erdahl. The Erdahls and their immediate predecessors, with the full knowledge of plaintiff and his predecessors, have always traveled this road to the village of Odessa, where they have done their marketing. They have used it to reach their church on Sunday, to procure their mail, and to take their children to and from school. In winter, during heavy snowfalls, the roadway as it extends to the west of the Erdahl farm often becomes impassable, so that the road to the east becomes the only means of ingress to and egress from Erdahl's farm.

At the present time, a number of improved highways connect Ortonville and Odessa, but do not touch the Erdahl farm. Erdahl and members of his family are the ones primarily interested in the right to travel across the east 80. To them, it is a roadway of necessity, particularly during the winter months.

No public or private work has ever been performed on this roadway, except for an occasional load of gravel placed thereon by the occupants of the Erdahl farm and that placed thereon by the township in 1944 just prior to the present proceedings. Prior to 1944,

plaintiff never objected to or protested against the use of this road and did not attempt to prevent traffic thereon by the general public or the occupants of the Erdahl farm.

Neither plaintiff nor his predecessors in ownership have at any time made an express dedication of this land for public purposes, nor done anything to indicate an *intent* to dedicate it as a public highway, except such an intent as may be gathered from the permissive use thereof by Erdahl and others through the years described.

■ Under our decisions, it is well established that a public highway may be accomplished by common-law dedication as well as by statutory dedication. Where the evidence establishes the owner's intent to dedicate his property for such public use and there is an acceptance thereof by the public, common-law dedication results. Morse v. Zeize, 34 Minn. 35, 24 N. W. 287; Klenk v. Town of Walnut Lake, 51 Minn. 381, 53 N. W. 703; Carpenter v. Gantzer, 164 Minn. 105, 204 N. W. 550; Metalak v. Rasmussen, 184 Minn. 260, 238 N. W. 478; Dickinson v. Ruble, 211 Minn. 373, 1 N. W. (2d) 373; Keiter v. Berge, 219 Minn. 374, 18 N. W. (2d) 35. These principles are well expressed in the Keiter case wherein this court stated (219 Minn. 378, 18 N. W. [2d] 37):

"* * * Dedication is a question of intention. The owner must intend to devote the land to a public use. The owner's intent may be express or implied, but it must appear clearly and unequivocally. Here, the evidence does not show an express intent to dedicate, but it permits a clear and unequivocal inference of such intention. Intention to dedicate may be inferred from the owner's long acquiescence in the public use of the land, * * *.

\* \* \* \* \*

"Acceptance of a dedication by the public may be shown by user by the public, as by travel, or by acts of public officers in improving and maintaining the highway."

■ In the instant case, the evidence is conclusive that a common-law dedication for public use was intended by the past and

present owners of the property involved. Plaintiff testified that he had lived on the premises since 1897 and that ever since that time he could recall east-west travel going over this road by horse and buggy, by wagon, by hayrack, and, more recently, by automobile; that as long as he could remember there were farm buildings on the land now occupied by the Erdahls; that the change in the road to its present location was in 1915 or 1916; that since then people using the road as it is now located have detoured through a gate constructed by his father onto the adjoining higher land during wet weather, such travel reverting to the road as now located as soon as it became dry; that this gate was installed for such purpose and not for his livestock; that the actual road tracks across the 80 are from three to five rods wide, and the road has run along the north side of the fence since 1917; that the wider area of the road was used only during wet seasons; and that in dry seasons there was no travel south of the fence.

Plaintiff further testified that he has never plowed where the road now exists, but has plowed up to it; that the land on which the road exists is stony, and that a new road over the present road would not damage him any further than he has already been damaged thereby; that the land just north of the road is fit only for hay and pasture, and then only if not too wet; that numerous people in addition to Erdahl have used the road in traveling to and from Odessa; that he, his father, and brother used the road westward over the west 80 to their South Dakota land about twice a week up to 1921; that the road is the most direct route to Erdahl's mailbox, east of plaintiff's farm; that Erdahl's children travel on it on their way to school at Odessa; that it has been used for travel to Yellow Bank churches and for trucks hauling gas; that lately many hunters have used it; and that in the fall of 1945 he had taken his threshing machine west over it through the Erdahl farm.

Plaintiff's testimony as thus outlined would seem to bring this case well within the principles set forth in Keiter v. Berge, 219 Minn. 374, 18 N. W. (2d) 35, *supra,* and compel a finding here that the road as it now exists was dedicated to the public by plaintiff and

his predecessors, and that the public, by its continued use thereof throughout the years, accepted such dedication. In the Keiter case, the evidence was far less conclusive than that outlined above. There, the owner of the land involved and his predecessors had acquiesced in the use of the road over such land for about 60 years; in cultivating their fields they had protected the road against damage by lifting their plows across it; they had caused gravel to be placed thereon at various times and had constructed a new road south of it as a substitute for a portion thereof, all indicating their recognition of the validity of the public's claim thereto.

Likewise, Carpenter v. Gantzer, 164 Minn. 105, 106, 204 N. W. 550, *supra,* seems directly in point, with an almost identical situation. There, a wagon trail along the Minnesota River bottoms was used by the several owners living in the immediate vicinity in order to reach their farms and to haul their produce. It was also used by hunters and "others who had occasion" to go that way. It passed over three farms, on some of which gates were maintained for pasturage purposes. At such farms, keys were furnished or kept at a place known to those using the road. It had been thus used from 1902 to 1923, but had been shifted nearer the river bank by the cultivation of land, where its final location was established some six years prior to the action there. It was some two rods in width, with slight variation. It was a road of necessity for the plaintiff there and his predecessors. No public work was ever performed thereon. From time to time, those living in the vicinity spent some little effort in filling ruts therein or removing roots or stumps therefrom. In that case we stated (164 Minn. 109, 204 N. W. 552) : "Permissive use need not be found from the fact that occasionally the public tolerated gates over the road for the landowner's accommodation."

There is no testimony or evidence of substance here which would support the trial court's finding that the road here involved had not been dedicated to public use. In fact, the only evidence which would seem to bear out in any respect whatever the trial court's conclusion was plaintiff's own testimony that "There is no road there. * * * [They were driving] over my land." And his statement that

in 1944 members of the town board "told me * * * that that was a public highway. I told them it wasn't * * *." Such testimony, primarily a conclusion of plaintiff, without bearing as to the intention of his predecessors and apparently in conflict with his admissions and the other evidence presented, could scarcely be held sufficient to sustain the finding complained of.

Under the authorities cited and in the light of plaintiff's admissions and other uncontradicted testimony presented, we are of the opinion that the trial court erred in finding that no public highway existed over the east 80, by dedication or otherwise, and that the evidence as outlined compels a finding that the road in question as it has been traveled since 1917 is now and has been, since that date at least, a public highway by common-law dedication.

Reversed with directions to amend the findings of fact, conclusions of law, and order for judgment in accordance herewith.

