EMIL MARQUARDT v. HENRY STARK AND ANOTHER.[1]

April 2, 1953.

No. 35,915.

*Everett L. Young,* for appellants.
*Philip L. Scherer,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order denying defendants' motion to vacate and set aside findings of fact, conclusions of law, and order for judgment and for a new trial.

---

[1]Reported in 58 N. W. (2d) 273.

Plaintiff originally brought this action in district court in 1945 to enjoin and restrain defendants from permitting obstructions in that portion of a ditch which runs through defendants' premises and to compel them to reopen the ditch where it passes through their land.

Plaintiff is the owner of the NW ¼ of section 12, and defendants are the owners of the SE ¼ of section 1, all in Moltke township, Sibley county, Minnesota. The quarter sections are contiguous, in that the northeast corner of plaintiff's quarter section touches the southwest corner of defendants' quarter section. Rather large sloughs are located on each of the quarter sections.

The record shows that approximately 60 years ago the town board of Moltke township established a ditch which commenced in the northeast corner of plaintiff's land, and a section of this ditch ran through a part of defendants' land. The ditch drained plaintiff's pasture into the slough on defendants' land and then continued from the northeast corner of defendants' slough in a northwesterly direction to a judicial ditch. Briefly, it is plaintiff's claim that defendants arbitrarily closed a segment of the township ditch which ran through their land so as to prevent the water from the slough and farm of plaintiff from draining through the ditch on defendants' land and then into the judicial ditch.

In 1942 or 1943, defendants placed some 10-inch tile in the bottom of the township ditch for a distance of about 12 feet and then filled in with dirt on the sides and top of the tile for the purpose of having a place to cross the ditch with their machinery. This crossing was located somewhat south of defendants' slough and approximately 500 feet north of the southwest corner of their quarter section. When the ditch was originally constructed the dirt which was extracted from it was piled up along the sides of the ditch, forming what is generally referred to as spoil banks. Shortly after defendants had constructed the crossing, they plowed down the banks on the sides of the ditch and spread that dirt out with a grader. This plowing and grading took place just south of the crossing and extended southwest toward plaintiff's land to a

point about 50 feet north of the south line of defendants' property. Defendant Henry Stark admits that some of the dirt may have fallen into the ditch while he was doing the plowing and grading.

Plaintiff claims in general that, from the time the ditch was established until the time when defendants put in the crossing and plowed out the banks, the water which would collect in his slough would drain out within a reasonably short time but that from then until the time of the trial in 1951 his slough, with the exception of one dry year, has been full of water.

In his complaint, when this action was originally commenced in 1945, plaintiff sought only mandatory relief. In September of that year a temporary injunction was issued against defendants. Under that order defendants were directed to remove all obstructions from the ditch where they drove across it to a depth and width equal to and even with the ditch immediately on both sides. The order also provided that "defendants may accomplish the same purpose by using tile which will take care of all waters reaching said crossing." They were not ordered at that time to do anything with respect to the section of the ditch which they had plowed or graded. According to the procedural history, that action was tried before the court on September 9, 1946, but no findings, order, or decision were ever made. It appears undisputed that at the conclusion of that trial the matter was left open pursuant to suggestions of the court that the parties might find some amicable way of working out their difficulties.

The trial out of which this appeal arose was held in the district court of Sibley county without a jury on September 5 and 6, 1951. The trial court found for plaintiff. In its conclusions of law it held (1) that defendants were liable to plaintiff for damages caused by the wilful closing of the ditch involved; (2) that defendants must forthwith reopen the ditch where it passes through their land to the normal depth of the ditch at the time the obstruction was made; and (3) that plaintiff was damaged by the acts of defendants in the sum of $4,320. Judgment was ordered accordingly.

The assignments of error which we deem pertinent for consideration under the facts and circumstances here are: (1) That the findings of the trial court that defendants wilfully obstructed the ditch are not supported by the evidence; (2) that the court erred in permitting evidence of damages and in allowing plaintiff to amend his pleadings at the end of the trial to conform with such evidence; and (3) that the court erred in allowing treble damages under M. S. A. 1945, § 109.33.

■ The first question to be disposed of is whether the evidence sustains a finding by the trial court that defendants wilfully obstructed the ditch involved.

It is an established rule of this court that the findings of fact based on conflicting evidence will not be disturbed on appeal unless manifestly and palpably contrary to the evidence as a whole, even though we might make a different finding if we had the fact-finding function. Loth v. Loth, 227 Minn. 387, 35 N. W. (2d) 542, 6 A. L. R. (2d) 176; Village of Minneota v. Fairbanks, Morse & Co. 226 Minn. 1, 31 N. W. (2d) 920. It is not within the province of this court to go into an extended discussion of the evidence to prove or demonstrate the correctness of the findings of the trial court. Rather, our duty is fully performed when we have fairly considered all the evidence and from it have determined that it reasonably supports the findings. Maust v. Maust, 222 Minn. 135, 23 N. W. (2d) 537; Service & Security, Inc. v. St. Paul F. S. & L. Assn. 211 Minn. 199, 300 N. W. 811.

In the case at bar there is evidence in the record that defendants intentionally plowed down and graded the banks of the section of the ditch in question. Further, there is testimony to the effect that after this was done part of the ditch appeared to be almost leveled off and that a disk had been used on the leveled part. Plaintiff's expert witness also testified that in his opinion the ditch had been filled in. It is therefore our opinion that there was evidence from which the trial court could find that defendants wilfully obstructed the ditch.

■ With reference to the second assignment, it appears from the record that when the present trial commenced on September 5, 1951, it was for mandatory relief only, plus attorney's fees, costs, and disbursements, since damages were neither pleaded nor demanded. Shortly after the trial commenced and before any testimony relating to damages was offered, the court made this inquiry:

"Any action here for damages? Nothing but a restraining order."

Plaintiff's attorney answered that there was an amendment somewhere asking for $1,000 damages. Defendants' attorney said that he did not believe so and was informed by plaintiff's attorney that he had a pleading to that effect. At that point in the discussion, the court ordered a recess for a conference with the attorneys in chambers. The matter of the amendment does not appear to have come up again until later in the day. After testifying on direct examination as to the amount of water in his slough after defendants plowed the banks, plaintiff was asked:

"Q. Now, has that caused you any damage so far as loss of rental is concerned?

"A. I think plenty.

"Mr. Young [defendants' attorney]: Object to that as immaterial. There is no allegation.

"Mr. Scherer [plaintiff's attorney]: Well, I will offer to amend to allege damages.

"The Court: Well, offer your proof now if you amend later."

Plaintiff was then asked on direct examination, among other things, what damages he suffered by reason of defendants' acts in closing the ditch and finally answered "something like a thousand dollars a year I should almost say."

The testimony had been completed on the first day of the trial and both parties had rested before the matter of amending the complaint came up again. Late that afternoon, after the court had announced an adjournment until ten o'clock the next morning, plaintiff recalled that he was to amend his pleadings and asked the court if he could bring in the amendment relative to the matter of

damages on the following morning. He then moved for leave to amend his pleadings to conform with the proof offered in the case. Defendants' attorney reminded the court that it was his understanding that the testimony was offered subject to a motion to amend, with which statement the court agreed by saying that it amounted to the same thing. After some further discussion between the court and the attorneys, plaintiff was permitted to amend his complaint by submission of the amendment to the court at ten o'clock on the following morning, which was September 6. When that ruling was made, defendants objected to any amendment of the complaint at that time to allege damages on the ground that the original complaint made no allegation as to damages but only asked injunctive relief and that permitting the amendment would be highly prejudicial to them.

When court convened the following morning, plaintiff submitted the amended complaint praying for the same injunctive relief requested in the original complaint and, in addition, for damages in the sum of $19,905 (including treble damages under § 109.33, repealed by L. 1947, c. 103). The court thereupon referred to the conference in chambers with the attorneys on the previous day and said that it had advised both attorneys at that time that plaintiff could proceed with his proof with reference to damages, if any, and submit an amended complaint thereafter and said that such procedure was followed. Defendants again objected to the amendment on the grounds that the motion to amend was not made until the case was partially tried, that the original complaint asked for no damages but only injunctive relief, that they had no warning or notice of any kind until the first day of the trial that an amendment would be asked for, and that it would be prejudicial to them to permit the amendment setting up an entirely new cause of action.

Defendants argue that, as a result of the amendment after trial, the action was converted from one for mandatory equitable relief to one for substantial damages together with statutory penalties and that the trial court handled the matter as though it were an ordinary motion to correct a simple variance by conforming the

pleading to the proof. They contend that the ruling was erroneous and prejudicial because they had no notice before the trial opened that they would be called upon to defend against a cause of action for substantial damages and they were unprepared to meet such an issue and because they were deprived of an opportunity to move for a new trial.

Plaintiff contends that the allowance of the amended complaint was proper and that the court had the right to award damages in an equitable action in the instant case, citing Gilbert v. Boak Fish Co. 86 Minn. 365, 90 N. W. 767, 58 L. R. A. 735, and the more recent case of Peterson v. Johnson Nut Co. 209 Minn. 470, 297 N. W. 178. In the former case it was held that the abatement of a nuisance and recovery of damages predicated thereon and incident thereto constituted but one cause of action. The Peterson case was an action to enjoin defendant from competing in business with plaintiffs in certain territory and for damages. The court held there that the trial court, having assumed jurisdiction, was authorized as an incident of relief demanded to give full relief and compel an accounting of the profits wrongfully obtained by defendant.

Conceding the above principles of law to be correct, defendants contend, however, that the instant case is different from the ones typified by Peterson v. Johnson Nut Co. *supra.*

It is our opinion that the fact situation in the case at bar is distinguishable from the above cases; that it was error to permit the complaint to be amended to demand substantial damages, including treble damages, at the close of the trial as was done here; that defendants were prejudiced thereby; and that in the interest of justice a new trial must be had on the question of damages.

■ The third issue raised is whether the lower court erred in allowing treble damages under § 109.33. Defendants contend that because § 109.33 was repealed by L. 1947, c. 103, the award thereunder was erroneous. Plaintiff urges that because the repealing statute contains a saving clause it was proper for the lower court to make the award which it did.

L. 1947, c. 103, § 1, reads:

"Minnesota Statutes 1945, Chapter 109, is hereby repealed save only as to unfinished proceedings instituted under said chapter and not completed at the date of this act. Any proceedings so instituted and incomplete at the date of the passage of this act may be completed under the provisions of the laws under which the same were instituted; and for such purpose the provisions of such laws shall continue and apply to such proceedings."

The important question for the disposition of this issue is the effect which the saving clause has on the case at bar. The general effect of a saving clause is to preserve the *status quo* of something existent at the time of its enactment. State v. Moore, 192 Ore. 39, 233 P. (2d) 253. It relates to accrued rights. Where the right under controversy has not accrued prior to the repeal, a saving clause cannot preserve the repealed statute until the right is acquired nor can it operate to hasten the acquisition of the right. 1 Sutherland, Statutory Construction (3 ed.) § 2049. It is clear that damages which can be shown to have occurred before March 20, 1947, the date of approval of the repealing act, give rise to a right to treble damages. Damages occurring subsequent to that date do not give rise to such a right, and the saving clause can have no effect on such damages. It is our opinion, therefore, that on retrial of the issue of damages plaintiff will be entitled to treble damages for only those damages which can clearly be shown to have occurred before March 20, 1947.

Remanded to the lower court for retrial of the issue of damages.