EDWARD P. FLYNN AND ANOTHER v. WALTER E.
BEISEL AND OTHERS.
TOWNSHIP OF PAYNESVILLE, APPELLANT.

102 N. W. (2d) 284.

April 8, 1960—No. 37,748.

*Curry & Peterson,* for appellant.
*Edward P. Flynn* and *Phillips & Donohue,* for respondents.

NELSON, JUSTICE.

Action brought by Edward P. Flynn and Loretta H. Flynn to enjoin Walter E. Beisel, Clifford S. Heitke, Elaine A. Heitke, and the township of Paynesville from erecting and maintaining a dock at the termination of a public easement abutting on Lake Koronis, a navigable body of water situated in Stearns County, Minnesota.

Plaintiffs admit that the public has easement rights of ingress to and egress from Lake Koronis but allege that those rights arise by prescription and not by dedication or grant and are restricted to travel only and not to use of navigable waters extending beyond the water's edge.

Defendant township of Paynesville alleges that, as representative of

the public, it is owner of an easement of way for ingress to and egress from Lake Koronis and that as such it possesses riparian rights where the easement abuts the lake and that plaintiffs have no riparian rights therein except those which they enjoy in common with others as members of the public.

The trial court held that the easement rights of ingress and egress do not include the right to maintain a dock at the foot of the easement; that the plaintiffs are the owners in fee of Lot 10, Block 4, Crescent Beach, Lake Koronis, Stearns County, less the easterly 5 feet thereof, subject only to an easement in the public for the right of passage only, to be enjoyed with the plaintiffs, from the public road to Lake Koronis, said passageway not being of any greater width at any point than 20 feet; that no owner of Lot 10 ever granted, conveyed, dedicated, or otherwise transferred to defendants or to the public any riparian rights appurtenant to Lot 10; and that the property of the plaintiffs fronts and abuts on Lake Koronis, a navigable body of water. The court also found that the plaintiffs are the owners and possessed of all the riparian rights appurtenant to said real estate and that not any of the defendants, or the public, including the township of Paynesville, in either a proprietary or governmental capacity, is the owner or possessed of any riparian rights on Lake Koronis at any point on or opposite said lot, save only the limited right of ingress to and egress from Lake Koronis over the passageway in question.

The court below ordered that the defendants, and each of them, and all persons acting under them, including the officers, agents, servants, and employees of the township of Paynesville, be permanently enjoined from erecting or 'maintaining any dock or other obstruction extending from any part of plaintiffs' premises or the passageway across the same into the lake and from interfering with or impairing the riparian rights of the plaintiffs.

Defendant village appealed from an order denying a motion for a new trial and assigned the following errors:

(1) The court erred in making the finding of fact that the width of the easement was 20 feet.

(2)   The court erred in its conclusions of law to the effect that the right to maintain a dock at a point where a public easement of ingress to and egress from a navigable body of water terminates was not a right attendant upon the possession of the easement.

(3)   The court erred in the use and term "joint" to describe the relationship of plaintiffs to the public with reference to their respective interests in the easement of ingress and egress to the lake.

This court must determine here whether the evidence as a whole reasonably tends to support the findings of the court below and in doing so must apply the rule that, when an action is tried by the court without a jury, its findings of fact are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly and palpably contrary to the evidence, and this rule applies whether the appeal is from a judgment or from an order granting or denying a new trial, and whether the evidence is oral or documentary. 1 Dunnell, Dig. (3 ed.) §§ 410, 411; State, by Peterson, v. Bentley, 245 Minn. 334, 71 N. W. (2d) 780; Alsdorf v. Svoboda, 239 Minn. 1, 57 N. W. (2d) 824; Marquardt v. Stark, 239 Minn. 107, 58 N. W. (2d) 273. This rule, however, does not relieve the appellate court from the duty of giving the evidence in every case careful examination and consideration in its determination of the question whether the evidence brings the case fairly within the rule.[1] An appellate court will not be bound by, and will review, the findings of the trial court, even though they may be supported by the weight of the evidence, if such findings are manifestly controlled or influenced by errors of law.[2]

The following facts seem pertinent to the disposition of the aforesaid questions: Long prior to plaintiffs' acquiring the ownership of Lot 10, Block 4, Crescent Beach, all of Crescent Beach was owned by one Dr. P. C. Pilon who on April 21, 1923, executed a plat, not filed until 1941. Dr. Pilon originally designated a roadway 20 feet wide called Frank's Lane, which easement ran in a southeasterly di-

---

[1] Wunder v. Turner, 120 Minn. 13, 138 N. W. 770.

[2] See, Lee v. Delmont, 228 Minn. 101, 36 N. W. (2d) 530.

rection across a lot to the left of plaintiffs' upon which buildings have since been erected. In 1920, however, Dr. Pilon staked out a new roadway to the east of the platted lane, and the latter roadway is the subject of this controversy. Fence posts and wire fences were constructed along both sides of the substitute roadway in the early 1920's, and the new Frank's Lane has been in use by the public ever since. Several witnesses testified regarding the use to which the latter passageway or easement was put from 1920, without interruption, to the present date. One of the main purposes for which it was used consisted of public travel over the passageway to and from the lake. This public use included parking cars on the roadway and using it as an access to the lake for swimming, boating, and landing boats where the easement abuts on the lake. Docks have been maintained by members of the public, such docks maintained, however, between the boundary lines of the easement. Being able to use the passageway for ingress and egress, the public swam and fished in the lake; placed ice-fishing houses along the west fence during the winter, parking their cars on the easement area.

All of Crescent Beach was subsequently acquired by Mr. William Landgraf. He purchased Lot 10 on August 7, 1946, and sold it the following day. Plaintiff Edward Flynn, an attorney at law, drew the deed for Mr. Landgraf when he sold the property on August 8, 1946. Mr. Flynn suggested to Mr. Landgraf that Lot 10 be conveyed subject to the easement and suggested that the deed include the words, "subject to an easement for the purpose of ingress and egress to and from Lake Koronis, on over and across the westerly side of Lot 10 as the same is now used and traveled over and across."

Mr. Landgraf testified that the public had used the easement for such purposes as hauling wood off the island, for swimming, for parking cars, for fishing, and for leaving their boats by the docks and fishing off the docks which were maintained by certain members of the public. He also testified that while he owned the property it was his intention that the public should have the right to use the full width between the boundary lines of the easement.

Through mesne conveyances the plaintiffs acquired title to Lot 10

on July 28, 1949. The deed contained the same easement reservation that Mr. Flynn had suggested Mr. Landgraf include in the deed when he sold the property August 8, 1946.

With respect to the use that the public has made of the easement, Mr. Flynn testified:

"During my occupancy and ownership it has been used by those who use the lake for harvesting ice, for fishing in summer, all seasons of the year, for access to the lake, for fishing and boating and water sports, landing boats, and bringing their boats back, and leaving off passengers."

■ It appears to be the rule in cases of doubt as to the width of the property dedicated that the contemporaneous and subsequent continuous construction which is put on the dedication or accepted by both the public and the former owners of the property will be considered to show their intention. See, 26 C. J. S., Dedication, § 51.

The trial court, in the instant case, found the easement limited to the width of 20 feet. Since the evidence indicates some doubt that the user included a greater width, we cannot say that the finding of the trial court on that issue was manifestly against the evidence. In that respect we sustain the findings of the trial court.

■ Dedication rests upon intent and not upon prescription. But where in the record of this case is there any evidence to suggest the establishment of prescriptive rights in preference to rights established by common-law dedication? If the right of travel has in fact been established, as admitted, where is there evidence upon which to base a restriction on that right acquired by the public which would limit the use to the water's edge? The evidence is as compellingly productive of a common-law dedication as an easement by prescription. The right of the public is determined to exist because of the individual use of the land by members of the public. Whenever the public is determined to have such right of use, it is one that members of the public, unlimited in number, can exercise. As we view it, there is no basis in the evidence in the instant case for assenting to the proposition advanced by the plaintiffs and the findings based thereon. It is well established

in this state, both in principle and authority, that others than fee owners may possess riparian rights.

■ This court long ago in Village of Wayzata v. G. N. Ry. Co. 50 Minn. 438, 442, 52 N. W. 913, 914, said:

"* * * Where the *grant or dedication to the public* is for the purpose of passage, and goes to the water, the conclusion—there being no indication of a contrary intention—is inevitable that the grant or dedication was intended to enable the public to get to the water for the better enjoyment of the public right of navigation." (Italics supplied.)[3]

■ In Troska v. Brecht, 140 Minn. 233, 167 N. W. 1042, this court cited with approval Barney v. Keokuk, 94 U. S. (4 Otto) 324, 24 L. ed. 224, and Potomac Steamboat Co. v. Upper Potomac Steamboat Co. 109 U. S. 672, 3 S. Ct. 445, 4 S. Ct. 15, 27 L. ed. 1070. The court quoted from the Potomac Steamboat Co. case as follows (140 Minn. 238, 167 N. W. 1044):

"* * * It never was questioned that, as to the streets whose termini abutted on the river, the water front was subject to the riparian rights of the public for use as wharf or dock or landing place."

While the Troska case dealt with a lake, a meandered body of water covering about 2,000 acres in Faribault and Blue Earth Counties, it quoted the following from Godfrey v. City of Alton, 12 Ill. 29, 37, 52 Am. D. 476, 478:

"When an easement is granted to the public, upon the margin of a navigable stream, the right to use and treat it as a landing is undoubted. Having dedicated the banks of the river, this united the two easements, each of which was essential to the full enjoyment of the other; * * *."

And from Balliet v. Commonwealth, 17 Pa. 509, 513, 55 Am. D. 581, 582, the court quoted as follows:

"* * * When one road commences or terminates at another road, it is intended to furnish a passage from and to that other; and the same rule applies to a road terminating at a navigable river. This road,

---

[3]See Bryant v. Gustafson, 230 Minn. 1, 40 N. W. (2d) 427, citing and reaffirming the Village of Wayzata case.

terminating at such a river, is intended as a means of public communication between the river and the country adjoining, * * *."

In Backus v. City of Detroit, 49 Mich. 110, 119, 13 N. W. 380, 384, the court, referring to the grantor, the donor in that case, and speaking of the public and those who might purchase lots embraced in the plat, said:

"* * * They must have supposed that in dedicating a way to the river she was giving to the public access to the river, *and not merely to a wall on its bank or some other obstruction put up to preclude access.* It must have been understood by them, as it was by an eminent court under the circumstances of a similar dedication, that 'the purpose was to provide means of access for the public to navigable waters,' and that 'such was the scope and purpose of the dedication.' * * * The dedication to the shore line no more had the effect to restrict the public use to that line *than would a grant that was similarly bounded.* The gift in the one case and grant in the other is to the river, and leaves in the donor or grantor nothing beyond." (Italics supplied.)

The court went on to say in terminating its opinion (49 Mich. 120, 13 N. W. 384):

"But it is not to be inferred, from what is above said, that in our opinion the city has a right to appropriate the end of the street to private uses, or to any uses inconsistent with the dedication. It would be premature for us to undertake to indicate precisely what the city may and what it may not do, since the question is not now before us. It is enough for us to say that the city derives its authority from the dedication of the public way, and that the construction of a wharf which shall give the means of access from the highway by land to the highway by water, is not inconsistent with the gift."

We quote the following from the Troska case (140 Minn. 239, 167 N. W. 1044):

"The fact that the streets of the village extended to the lake gave the public the right to use the termini of the streets as a landing place in going to and from the lake; and to this extent at least, *the village, as the representative of the public, possesses riparian rights; and this*

*is sufficient to make it a riparian owner within the meaning of the statute."* (Italics supplied.)

Lake Koronis is a navigable lake and it needs no argument to establish the fact that the lake is of beneficial public use.

This court has recently spoken definitely on the subject of riparian rights stating that they are an incident, not of ownership of the bed of the lake, but of the ownership of the shore, and it has laid down the rule that an abutting or riparian owner of a lake, suitable for fishing, boating, hunting, swimming, and other domestic or recreational uses to which our lakes are ordinarily put in common with other abutting owners, has a right to make such use of the lake over its entire surface, in common with all other abutting owners, provided such use is reasonable and does not unduly interfere with the exercise of similar rights on the part of other abutting owners, regardless of the navigable or public character of the lake and regardless also of the ownership of the bed thereof. Johnson v. Seifert, 257 Minn. 159, 100 N. W. (2d) 689, and cases cited.[4] In so holding, this court expressly overruled Lamprey v. Danz, 86 Minn. 317, 90 N. W. 578.

█ It is clear from Johnson v. Seifert, *supra,* that any privileges enjoyed incident to riparian rights are almost universally held to be in common with other abutting owners and that includes the public where the public is involved through a town or village as a riparian owner representing the public. The term "joint ownership" therefore does not apply in describing the relationship of fee owners to the public with respect to their interests in riparian rights growing out of an easement for ingress to and egress from a navigable body of water.

A common-law dedication is one accomplished otherwise than by a plat executed and recorded as required by statute. See, 5 Dunnell, Dig. (3 ed.) §§ 2628, 2644, 2645, and cases cited in note 98.

The record clearly establishes that Dr. Pilon, the original owner of the premises here, laid out a plat on which was contained a similar easement tract for the use of the public and other owners of property in

---

[4]See, also, State v. Korrer, 127 Minn. 60, 148 N. W. 617, 1095, L.R.A. 1916C, 139; Annotation, 31 A. L. R. 979; Anderson v. Reames, 204 Ark. 216, 161 S. W. (2d) 957.

the vicinity, later filed in 1941. It is equally well established that Dr. Pilon in about 1920, after preparing the aforesaid plat, laid out a new easement tract or right of way for public travel, placing fences on each side thereof, extending the passageway from a public road to the water's edge. That roadway has been in constant use by the public for harvesting ice, for fishing all seasons of the year, for access to the lake for boating and water sports, for landing boats and bringing boats back, for leaving off passengers, and for erecting and using docks extending into the water from the abutting easement. Acceptance of a dedication may be shown by a user on the part of the public, as by travel, and where riparian rights are involved, devotion to public use, including various uses of recreational purposes such as sailing, rowing, fishing, bathing, skating, taking water for domestic, agricultural, and even city purposes, cutting ice and wood, hauling the same, and by other public purposes.

The essentials of a common-law dedication of a roadway are the landowner's intent—express or implied—to have his land appropriated and devoted to the public use and an acceptance of that use by the public. As already stated, dedication rests upon intent and not upon prescription. It is the rule, laid down by this court, that, although there can be no dedication without the landowner's intent, such requisite intent need not be express and in fact need not actually exist in the owner's mind, but may be implied from acts and conduct of the owner which are unequivocally and convincingly indicative of a dedication and upon which the public has a right to and does rely. We have held that acts and visible conduct on the part of the owner which unequivocally and convincingly carry with them a plain intent to dedicate a road to public use will prevail over the owner's subsequent denial of such intent, and that the familiar maxim that a man is presumed to intend the usual and natural consequences of his acts is applicable to dedications. Whenever the evidence is in conflict as to whether the owner intended to dedicate and whether the public accepted the dedication, then the ultimate question of dedication is peculiarly one for the finder of fact. See, Daugherty v. Sowers, 243 Minn. 572, 68 N. W. (2d) 866; Keiter v. Berge, 219 Minn. 374, 18 N. W.

(2d) 35; Mueller v. Drobny, 225 Minn. 338, 31 N. W. (2d) 40; 5 Dunnell, Dig. (3 ed.) §§ 2644, 2645; 26 C. J. S., Dedication, § 51.

The plaintiffs assume what the defendants assumed in Daugherty v. Sowers, *supra,* that if the road leads only to the lakefront no dedication of riparian rights can exist. But this court said, in the Daugherty case, that the defendants overlooked the fact that a roadway may be dedicated as a public highway even though it be a cul-de-sac. The evidence is clear in the instant case that the plaintiffs and all who have occupied the land in the immediate area have continuously, without interruption, used the road together with others from the surrounding vicinity, as members of the public, and the implication is undisputed that the road in question had at all times since it was laid out and fenced remained open to all members of the public who have desired to make use of the passageway in going to and from the waters of Lake Koronis; that it has had in the recreational field every kind of use, and commercially it has been used for cutting and hauling ice and wood. This right of travel and use has been enjoyed by the public generally and without interference. The rule seems to be that it is the right of travel by all the world, and the exercise of that right, which makes a roadway a public highway. A public user may be established by a comparatively small number of persons, and the user by the public is sufficient if those members of the public—even though they be limited in number and even if some are accommodated more than others—who would naturally be expected to enjoy it do, or have done so, at their pleasure and convenience. The intent to dedicate is the same in all cases, and the user to establish that intent may be of short or long duration. The requisite intent of dedication is adequately established the moment the user is sufficient to indicate to prudent men that the public claim to the road is one of right and that the owner was or is fully aware of the extent and character of that user and makes no objection thereto. Daugherty v. Sowers, *supra,* and authorities cited.

Common user by the public "is the very highest kind of evidence" of public acceptance of a dedication. Morse v. Zeize, 34 Minn. 35, 37, 24 N. W. 287, 288.

While it appears that the dedicator, Dr. Pilon, first platted and dedicated a road on the plat which was later filed in 1941, it is clear that he changed his mind about the location of the passageway and dedicated a new road, placing a fence on both sides, and revoked the original dedication by substituting a new road for the old one. Since that occurred in 1920 it has had the consent of the public and consent without interruption on the part of the dedicator and other owners of the lands involved. The law is clear that after acceptance by the public a dedication is irrevocable by the act of the dedicator, and the public acquires vested rights by such dedication which can only be divested with its consent or by operation of law. Since there has been no revocation or any consent to revocation, the present passageway continues to be an easement for a public road as the trial court found, and according to the record clearly and unequivocally an easement without restrictions. Keiter v. Berge, *supra.*

While the evidence does not show an express intent to dedicate in so many words, it does, by the acts and conduct of Dr. Pilon and others, clearly and unequivocally justify an inference of such intention, without any testimony having evidentiary weight to the contrary. We conclude, therefore, that the evidence as a whole compels a finding of common-law dedication and an acceptance thereof by the public. See, Mueller v. Drobny, *supra.*

It was held in Mitchell v. City of St. Paul, 225 Minn. 390, 394, 31 N. W. (2d) 46, 49, that:

"* * * While the title of a riparian owner on navigable or public waters extends to ordinary low-water mark, yet it is unquestionably true that his title is not absolute, except to ordinary high-water mark. As to the intervening space, the title of the riparian owner is qualified or limited by the public right. The state may not only use it for purposes connected with navigation without compensation, but may protect it from any use of it, even by the owner of the land, that would interfere with navigation."

See Nelson v. DeLong, 213 Minn. 425, 7 N. W. (2d) 342, on the rights of a riparian owner and of the public on a body of navigable

water, including the right to establish and maintain a public dock on park property adjacent to and abutting on a navigable lake.[5]

■ The testimony of plaintiffs as to the use of the passageway during and prior to their occupancy speaks for itself as to continuous user, and the suggestion of Edward P. Flynn that an easement reservation be placed in the Torberg-Landgraf deed of August 8, 1946, indicates the long acquiescence in the public use of the land by all past owners including Dr. Pilon. The evidence is, we think, conclusive that a common-law dedication for public use was intended by past and present owners of the properties involved and that the accepted intended public use does not cut off at the water's edge but that the dedication was intended to enable the public to have access to the water for the better enjoyment of the public right of navigation, and further to give the public, as well as the township of Paynesville, riparian rights to be enjoyed in common with the plaintiffs.

The public's use in common with all other abutting owners must be reasonable and must not unduly interfere with the exercise of similar rights on the part of other abutting owners, regardless of the navigable or public character of Lake Koronis, and this applies to the erection of any docks at the end of the passageway as it abuts upon the lake.

The order of the court is modified with directions to dissolve the injunction and to amend the findings of fact, conclusions of law, and order for judgment in accordance with this opinion.

MR. JUSTICE LOEVINGER, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[5]See M. S. A. 365.10(6) as to the powers of the electors of each town to vote such sums as they deem expedient for town expenses including the construction and maintenance of docks and breakwaters. See, also, Petraborg v. Zontelli, 217 Minn. 536, 15 N. W. (2d) 174; Barney v. City of Baltimore (C. C. D. Md.) 1 Hugh 118; Ne-Bo-Shone Assn. v. Hogarth (W. D. Mich.) 7 F. Supp. 885; Barney v. Keokuk, *supra*; Williams v. Intendent and Council of Gainesville, 150 Ala. 177, 43 So. 209; McMurray v. City of Baltimore, 54 Md. 103.