# PHILIP ANDERSON v. HAROLD BIRKELAND AND ANOTHER.[1]

June 24, 1949.

No. 34,857.

[1]Reported in 38 N. W. (2d) 215.

*Mart M. Monaghan,* for appellant.
*Bauers & Carlson,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying defendant's motion for a new trial in an action to enjoin defendant from obstructing a roadway alleged to have been established as a public highway.

Plaintiff, defendant, and the Reverend Andreas Helland own adjoining lake properties which comprise the major portion of a U-shaped elbow of land which juts from the south in a northwesterly direction into Forest Lake. Defendant owns the west portion, plaintiff the middle portion, and Helland the east portion of this elbow of land. Defendant's tract is bounded on the south by Hennepin county highway No. 19, which runs in an east-west direction. Plaintiff's and Helland's tracts, on the other hand, have no direct connection with the highway, although it has been alleged that an

unrecorded deed gives them access to the highway without passing over defendant's land. The roadway in controversy is a side road that runs northward from highway No. 19 upon defendant's property for approximately 180 feet, at which point it divides into two separate branches. One branch (referred to herein as the Birkeland branch) swings to the west and then continues northward on defendant's property to his buildings. The other branch (referred to herein as the Helland branch) goes in a northeasterly direction for a short distance to defendant's east line and thence upon plaintiff's property. Each branch terminates with the buildings of the respective tract holder. The major issue is whether the portion of the roadway extending from highway No. 19 up to the Helland branch and thence along the Helland branch to defendant's east line exists as an established public highway through dedication by the defendant (or by his predecessor in interest) and through acceptance by public user. The jury found that the roadway had been dedicated, accepted by public user, and now exists as a public highway. A determination of whether the verdict is sustained by the evidence becomes abnormally involved, in that the trial court's instructions permitted the jury to determine if the roadway existed as a public highway on any one of three theories—(1) by statutory user and maintenance at public expense under M. S. A. 160.19; (2) by common-law dedication; or (3) by estoppel *in pais*—without indicating on which theory its finding was based.

If the evidence is insufficient to sustain a verdict on any one of several theories upon which an issue of fact is submitted to the jury, the verdict must be set aside where it is impossible to determine upon which theory the verdict is based, unless it conclusively appears that the verdict is right as a matter of law on one or more of said theories. State Bank v. Strandberg, 148 Minn. 108, 180 N. W. 1006. In addition to the major issue, we have minor issues as to the effect of undisputed testimony of original permissive use, newly discovered evidence, and the admissibility of a conversation between a decedent and a witness who is one of the property owners served by the disputed road as his only means of ingress and egress.

Reverend Birkeland, defendant's father and predecessor, was the owner of approximately the western half of this elbow of land from about 1911 until the time of his death in 1925. Defendant, while his father lived, occupied the property as one of the members of the family. Subsequent to his father's death, defendant, with the obvious consent of all parties in interest, continued to share active possession of the premises with his mother, who had a life estate therein. In 1947 defendant acquired full legal title to the entire property. Plaintiff's action for injunctive relief was started after defendant in 1946 dug a ditch across the road to prevent plaintiff from using the road in reaching his property.

Both Fred Paulson (the owner of a tract to the northwest between defendant's and Helland's) and Helland testified that at the time they purchased their tracts (about 1908 or 1909) there was a rough road in approximately the same location as the road now in controversy, and that it then extended beyond in a straight northerly direction. In 1913, they testified, its course was changed to conform to the present route of the Birkeland branch. Prior to the building of the Helland branch, about 1924 or 1925, all occupants of the three tracts, their friends, tradesmen, and deliverers of merchandise used the Birkeland branch. Defendant testified that his father in 1912 told Paulson that he, his family, and his friends could use the entire road on a permissive basis as long as Paulson owned his tract, but that the permissive use should cease with the termination of his ownership.

■ Taking, as we must, the view of the evidence most favorable to the verdict and to the findings of the trial court, we turn to a consideration of the major issue: Is the evidence sufficient to show the establishment of a public highway by statutory user, pursuant to § 160.19? We think it is. If for a continuous period of at least six years a roadway has been used by the public, and, in addition thereto, has been worked and kept in repair as a public highway under authority and at the expense of government—functioning through an appropriate agency—the roadway, pursuant to § 160.19, is thereby dedicated and accepted as a public highway. Whiteley v.

Strickler, 159 Minn. 145, 198 N. W. 420. It is not necessary that every portion of the road should be worked, nor that any part should receive attention every year during the period. Town of Wells v. Sullivan, 125 Minn. 353, 147 N. W. 244. In 1928 or 1929, Hennepin county regraded and raised the surface of highway No. 19 at its intersection with the disputed side road. As a result, it became necessary to bring the two roads up to a common grade level. This work was done by the county, functioning through its board of county commissioners, by raising the grade of the approach area of the side road. The jury could reasonably find that the work was conducted over a period of at least six years and that it encompassed, *not merely the side-road approach area, but the entire portion of the side road now in controversy.* The county engineer testified that the side road was in fact graveled and resurfaced for *a distance of 500 or 600 feet beyond its intersection with highway No. 19.* Sometime thereafter road oil was applied; in fact, surface material was put on the side road prior to the time highway No. 19 was regraded. Upon direct examination, the engineer said that this work covered a period of four or five years. Upon cross-examination, he admitted that it was performed over a period of something like six years and that it might even be a little longer than that. One of the commissioners, who became a member of the county board in 1929, said that the work on the side road commenced in 1928, and that it had been carried on for at least four or five years after 1929. He testified that a row of guard posts had been installed on the side-road grade for a distance of 50 or 60 feet beyond the intersection. The evidence clearly established that the side road, *independent of and in addition to any work on the highway,* was worked and repaired by a governmental agency at public expense. The joint testimony of the two county officials provided an adequate basis for a determination that the work continued for at least six years.

■ Was there a *public user* of the road? Each year throughout the entire six-year period—and for a long time both prior and subsequent thereto—the defendant, Paulson, and Helland occupied their respective cottages during the summer season. Tradesmen who

catered to their needs used the road in calling on them and in making deliveries. Friends, and in fact any person who had occasion to call on them, followed the same route without objection. The clear implication is that the road was open to any member of the public who had either the desire or the occasion for any purpose to call upon the tract occupants. It is the right of travel by all the world, and not the exercise of the right, which constitutes a road a public highway, and the user by the public is sufficient if those members of the public—even though they be limited in number and even if some are accommodated more than others—who would naturally be expected to enjoy it do, or have done so, at their pleasure and convenience. Montgomery v. Somers, 50 Or. 259, 266, 90 P. 674, 677; 1 Elliott, Roads and Streets (4 ed.) § 180; 25 Am. Jur., Highways, § 2. What is a sufficient user depends on the circumstances of each case. Phillips v. City of Stamford, 81 Conn. 408, 71 A. 361, 22 L.R.A. (N.S.) 1114; 16 Am. Jur., Dedication, § 36. A public user of a road may be established by a comparatively small number of persons who during the summer season have occasion to take such road to the lake shore for recreation or other purposes. Phillips v. City of Stamford, *supra;* 16 Am. Jur., Dedication, § 36. In the instant case, the user by the public was of a character and quantity adequate to meet the requirements of § 160.19. Clearly, the roadway in dispute had by statutory user been established as a public highway.

The evidence also sustains the verdict on the basis of common-law dedication. We find no difficulty with defendant's testimony that his father in 1912 told Paulson that the road could be used only on a permissive basis. Even if we assume that this testimony is uncontradicted and must be accepted as true, the jury could reasonably find that the earlier permissive basis had been abandoned and that the road had subsequently been dedicated to the use of the public when it was worked and repaired at public expense by Hennepin county. The defendant was in possession and must necessarily have known of the improvement of the road by public authorities. He stood by and over a period of years permitted the ex-

penditure of public funds upon the road without protest. The plain implication of his conduct is that he intended and considered the road to be dedicated to the use of the public. The intention of the owner to set apart a strip of land for the use of the public as a highway is the foundation of every dedication. Any act of the dedicating owner, or of any person acting for him and with his knowledge and consent, from which an intention may be clearly and unequivocally inferred, is sufficient to constitute a common-law dedication. See, Keiter v. Berge, 219 Minn. 374, 18 N. W. (2d) 35; 16 Am. Jur., Dedication, § 17. Although, as a requisite for common-law dedication, intention must appear to exist, it need not always exist in fact in the mind of the landowner, but may be ascertained from acts on his part which unequivocally and convincingly carry with them a plain implication of an intention to dedicate a road to public use. Evans v. City of Brookings, 41 S. D. 225, 170 N. W. 133; 1 Elliott, Roads and Streets (4 ed.) § 140; 4 Tiffany, Real Property (3 ed.) § 1110; 4 McQuillin, Municipal Corporations (Rev. 2 ed.) § 1697. It is presumed that the owner intended what his acts indicated. The landowner's testimony as to his intent will not prevail against his unequivocal acts and conduct inconsistent therewith and upon which the public had a right to and did rely. Evans v. City of Brookings, *supra*.

"* * * The public may rely on that which the land owner has done as indicative of his intent, and if his conduct has been such as to lead an ordinarily discreet and thoughtful man to infer an intention to make a dedication, and the public rely upon such acts as a dedication and accept the same for public use and use it as a public road, the dedication becomes complete and cannot be recalled by the owner." Seidschlag v. Town of Antioch, 207 Ill. 280, 285, 69 N. E. 949, 951.

▮▮▮ The landowner's unequivocal expression of an intent to dedicate a road to public use is like the making of an offer to enter into a contract. When the offer is accepted the contract is complete. When the landowner's dedication of a road is accepted by the public,

the dedication is complete and is not subject to revocation. Acceptance of a dedication by the public may be shown by public user, as by travel, or by acts of public officers in improving and maintaining the road. Keiter v. Berge, 219 Minn. 374, 18 N. W. (2d) 35; Town of Lake View v. LeBahn, 120 Ill. 92, 9 N. E. 269. Either or both suffice. Here, the dedication was accepted by the continued expenditure of public funds and also by public user. The basic element of dedication is the owner's intent—and not public use for the period of prescription—and when that intent is clearly manifested the dedication against the owner becomes effective and irrevocable as soon as we have a public user of a degree and character sufficient to indicate a public acceptance, and such user to be effective need not exist for any definite length of time. See, Keiter v. Berge, *supra;* Seidschlag v. Town of Antioch, 207 Ill. 280, 69 N. E. 949; 1 Elliott, Roads and Streets (4 ed.) § 180. Beyond the bare necessity of sufficient user to manifest an acceptance by the public, the length of time of user becomes important only as it may be a significant evidentiary factor in establishing or corroborating the owner's dedicatory intent. The longer the time of public user the stronger is the presumption of dedication. 1 Elliott, Roads and Streets (4 ed.) § 177. In the instant case, commencing with the improvement and maintenance of the road at public expense, we have an acceptance by the public through a period of user over a period of at least 17 years.

We find no difficulty in holding that the evidence sustains the verdict on the basis of an estoppel *in pais,* although there was no necessity for submitting the issue of dedication to the jury upon that theory. Dedication, contrary to the holding of certain cases, is not based on estoppel. It is of itself a distinctive common-law doctrine which originated much earlier in the English law than the doctrine of estoppel and is perfectly comprehensible without reference to the latter, although the essential elements of the latter may be present in a given case. 4 Tiffany, Real Property (3 ed.) § 1110,

note 16; 20 Or. L. Rev. 134-139; 11 Col. L. Rev. 788-789.[2] In the instant case, the elements of an estoppel were present. The defendant by his conduct represented to the public authorities that the roadway had been dedicated to public use when he permitted, without protest, the road to be worked and maintained at public expense. Upon this representation, the public—through an established governmental agency—relied, and over a period of several years expended public funds for improvement and maintenance. It would now be inequitable to permit defendant to deny his representation of dedication and thereby deny the public—of which plaintiff is a member—of the use of a road for the improvement of which its funds have been expended. Acceptance by the public of the dedication is obvious.

The evidence, upon all three theories, sustains the verdict and the findings. We need not determine whether it was error to permit Reverend Helland to testify to a conversation with a decedent, the defendant's father, because in any event his testimony was not

[2]Certain courts, in overlooking that dedication is a question of the owner's intention, have injected the theories of estoppel where a detriment results to the public if its use of a roadway is interrupted.

"* * * It would seem that, when a dedication is found under such circumstances, the decision should rest, not upon any idea that the owner is estopped to deny a dedication because of any detriment the public would otherwise experience, but rather upon the ground that the owner knew or should have known of the facts and surrounding circumstances and, consequently, held to have impliedly intended to dedicate his land to the purpose for which it was being used and to have impliedly promised not to interrupt the public in their user. This keeps the doctrine of dedication on the foundation upon which it should rest—an intention upon the part of the owner to dedicate. There is no reason why one can not indicate by a course of conduct an intention to devote his property to public use just as one can indicate an intention to transfer an estate in land by written instrument of conveyance." 20 Or. L. Rev. 136; see, also, 9 Wigmore, Evidence (3 ed.) § 2413.

For certain exceptional cases where the doctrine of estoppel is properly applied—such as where a representation of dedication is made to an individual and not to the public as a whole—see, 4 Tiffany, Real Property (3 ed.) § 1110, and 20 Or. L. Rev. 136.

prejudicial. The conversation pertained only to the route to be followed by the Helland branch of the road, and the purport of the conversation was not necessarily indicative of either dedication or permissive use.[3] We also observe that defendant testified that Reverend Helland had used his branch road *"since 1926 without our permission."* (Italics supplied.) Upon the basis of this testimony, his use of the branch road, insofar as it crossed the land of defendant, was adverse for the full period necessary to give him an easement by prescription.

There could be no prejudicial error in the court's ruling which excluded from introduction into evidence a Torrens certificate issued in 1946. Section 508.25 (4) specifically provides that all rights in public highways upon the land shall remain unimpaired by Torrens registration proceedings. See, Owsley v. Johnson, 95 Minn. 168, 173, 103 N. W. 903, 905.

In the light of our theory of the evidence herein, it is unnecessary to consider the assignment of error as to newly discovered evidence pertaining to a period which by several years antedates the time when the road was dedicated. Such evidence is not material.

The order of the trial court is affirmed.

Affirmed.

---

[3] We observe, however, that the decision of State v. Eisele, 37 Minn. 256, 33 N. W. 785, is by its own language and facts, with respect to the admissibility of testimony concerning a conversation with a decedent, limited to witnesses who as abutting property owners *have no interest other than that possessed by the public at large.*