Albert D. SHINNEMAN, Respondent,

v.

ARAGO TOWNSHIP, et al., Appellants.

No. 49423.

Supreme Court of Minnesota.

Jan. 4, 1980.

Gregory D. Larson, Park Rapids, for appellants.

John A. Masog, Park Rapids, for respondent.

Wallace F. Gustafson, Gen. Counsel for Minnesota Ass'n of Tp. Officers, Willmar, amicus curiae.

Heard before SHERAN, C. J., OTIS, and KELLY, JJ., and considered and decided by the court en banc.

OTIS, Justice.

In October 1976 plaintiff Albert Shinneman petitioned the Arago Township Board to vacate a road crossing his property that had never been officially dedicated. The town board took no action on the petition. By a complaint served November 4, 1976, plaintiff sued to enjoin defendant townships, Arago and Lake Emma, from using and maintaining the road, and, in the alternative, he requested that the court vacate the road or award him damages. The defendant townships answered alleging that

the road had been established as a public road via statutory user pursuant to Minn. Stat. § 160.05, subd. 1 (1978), and that plaintiff is precluded from recovering damages.

After a trial without a jury, the trial court concluded that Arago Township had taken plaintiff's property by establishing a town road pursuant to § 160.05, subd. 1, and that plaintiff was entitled to compensation. Further proceedings were ordered to fix damages. Judgment was subsequently entered for the sum of $8,470.00. Arago Township was also charged $500.00 for appraiser fees. Defendants appealed. We reverse the trial court's award of damages and appraiser fees and remand with directions. to enter judgment for defendants.

In 1953 plaintiff purchased some property in Arago Township. The land, lying south of Hubbard County Road Forty, is bordered on the south by Potato Lake and on the east by the Arago-Lake Emma township line. The lot is 300 feet deep and contains approximately 120 feet of lakeshore.

The road in controversy branches off a road that runs on the township line south from County Road Forty. It lies along the eastern edge of plaintiff's property. Although there was some use and maintenance of the road prior to the early 1960's, such use was noncontinuous and unsystematic. During this period the road existed as an eight- to ten-foot wide grassy center roadway.

Sometime during or prior to the early 1960's, however, the townships of Lake Emma and Arago agreed to divide responsibility for maintaining roads on or along this township line, with Lake Emma charged with maintaining roads south of County Road Forty. The road over plaintiff's property diverges only a short distance, no more than sixty feet, from the township line and was treated as an extension of the road on the town line. Thus, while the road lies wholly within Arago Township, Lake Emma began maintaining it sometime between 1960 and 1962. In a letter dated January 11, 1962, the Lake Emma Township Board informed plaintiff that "Lake Emma will act to have this road maintained as previously agreed with Arago Township and * * * any action or actions to move said road shall be up to the Township of Arago in which said road is located."

The road has been maintained on a consistent basis since the early 1960's. While the northern portion received somewhat more attention at first than did the southern part, the maintenance was sufficient to keep the road open to the lake. The evidence shows clearly that Lake Emma continued to maintain this road through the commencement of this action. Over the period of maintenance the width of the road was gradually increased to about twenty feet.

Plaintiff testified at trial that he blocked passage on the road at least twice between 1961 and 1963. On the first occasion the obstruction was removed after plaintiff was contacted by township officials. The second time, plaintiff placed a log across the road with the purpose of preventing a certain driver from damaging the road while it was muddy. When the road dried, and before he was contacted by governmental officials, plaintiff removed the log. On at least two other occasions, at the request of county officials, plaintiff moved property that had been parked in a manner that partially obstructed the roadway. In neither instance was any obstruction intended by plaintiff. While plaintiff continued to verbally register his objections to public maintenance of the road, the record discloses no other physical action.

On October 4, 1976, plaintiff presented to the Arago Township Board a petition requesting vacation of the road. The petition contained eight signatures as required by Minn.Stat. § 164.07, subd. 1 (1978). Three of the eight original signers, however, later signed a counter petition and requested in writing that their names be withdrawn from plaintiff's petition. While both petitions were considered at the board's November 1, 1976, meeting, no action has ever been taken with respect to plaintiff's petition.

■ 1. Our initial question is whether a public road was established pursuant to Minn.Stat. § 160.05, subd. 1 (1978).[1] The requirements of the statute are (1) use by the public and (2) maintenance at the expense of an appropriate agency of government (3) over a continuous period of at least six years. *Anderson v. Birkeland,* 229 Minn. 77, 80, 38 N.W.2d 215, 218 (1949).

■ The evidence leaves no doubt that the public use requirement has been satisfied. While traffic over the road was not copious, the road was used by those members of the public who could naturally be expected to enjoy it. That is sufficient. *Id.* at 82, 38 N.W.2d at 219.

■ 2. A more serious issue is whether the road has been maintained by an appropriate agency of government. While this road branches off a road on the Lake Emma-Arago town line, it lies entirely within the territory of Arago Township. At the same time the road was maintained by Lake Emma Township.

The statute, Minn.Stat. § 160.05, subd. 1 (1978), states that the road must be maintained "as a public highway." Clearly, until the six years have passed the road is not a public highway, but for purposes of determining whether the statutory requirements have been met, it is nevertheless treated as such. The maintenance must be of a quality and character appropriate to an already existing public road. Thus, if a governmental agency would have been authorized to maintain this road had it already become a public road, maintenance by that agency will satisfy § 160.05, subd. 1.

3. The question, therefore, is whether Lake Emma could have exercised any authority to maintain a public road outside its territory under these circumstances.

In certain circumstances townships are permitted to act officially beyond their territorial boundaries. Minn.Stat. § 160.07 (1978), for example, permits township road authorities to expend reasonable sums to assist in the improvement and maintenance of roads lying beyond the boundary of and leading into such town.[2] Minn.Stat. § 164.-12 (1978) provides that adjoining towns may establish, alter, and maintain roads "on or along the line between such towns."[3] (It should be noted that the predecessor to § 164.12 referred only to roads "on the line" between two towns. Minn.Stat. § 163.17 (1957).) When such roads are to be established or altered the town boards are to divide the cost and responsibility for maintenance, and they are directed to enter an agreement with regard thereto.

■ These statutes evince an intent that town lines not operate as insuperable barriers. Townships may enter agreements of mutual convenience regarding roads on or along town lines. Even though a town line

---

1. Minn.Stat. § 160.05, subd. 1 (1978) provides:
   When any road or portion thereof shall have been used and kept in repair and worked for at least six years continuously as a public highway, the same shall be deemed dedicated to the public * * * and be and remain, until lawfully vacated, a public highway whether the same has ever been established as a public highway or not * * *.

2. Minn.Stat. § 160.07 (1978) provides:
   The road authority of any county, town or city may appropriate and expend such reasonable sums as it may deem proper to assist in the improvement and maintenance of roads, bridges, or ferries lying beyond the boundary of and leading into such county, town or city.

3. Minn.Stat. § 164.12 (1978) provides in part:
   Subdivision 1. Proposal to establish. When adjoining towns propose to establish, alter, or vacate a road on or along the line between such towns they shall proceed as hereinafter provided.
   Subd. 2. Division of responsibilities. The town boards shall divide the length of the road proposed to be established, altered, or vacated into two parts. When it is proposed to establish or alter a road, the division shall be made so as to divide as nearly equal as possible the cost of right of way, construction, and maintenance of the entire road. If the proposal is to vacate a road, the division shall be made so as to divide as nearly equal as possible any damages that may be occasioned thereby.
   Subd. 3. Agreement. After the division the boards shall enter into an agreement specifying which part shall be vacated, or opened, constructed, and maintained by each. Thereafter, each board shall proceed in the manner and subject to the same review as provided in section 164.06 or section 164.07.

runs down the center of a road, the adjoining towns are not compelled to divide the duties of maintenance strictly in accordance with their territorial borders. They may reach some other accommodation. Moreover, the laws recognize that there are occasions where, for reasons of necessity or practicality, such roads do not lie precisely on the town line. In such circumstances the towns are not precluded from dividing the duties of maintenance for that portion of the town line road.[4]

■ In the circumstances of this case, therefore, where the road departs only a short distance from the town line and is an extension of a road lying on the town line, had that road already assumed the character of a public road, the towns of Arago and Lake Emma would have had clear authority to enter an agreement allocating to Lake Emma responsibility for maintaining the road. Consequently, maintenance performed by Lake Emma pursuant to such an agreement was performed by an appropriate agency of government within the meaning of Minn.Stat. § 160.05, subd. 1 (1978).

4. Plaintiff also questions whether the required use and maintenance occurred over a continuous period of six years. He urges that he took physical action that stopped the running of the period.

In *Barfnecht v. Town Board of Hollywood Township,* 304 Minn. 505, 508, 232 N.W.2d 420, 423 (1975), we stated, "if [the landowner] means to dispute the rightfulness of the public use, he must assert his rights within a statutory period by physical action or suit." In so doing we restated the law set forth in *Miller v. Town of Corinna,* 42 Minn. 391, 392, 44 N.W. 127, 128 (1890), that the landowner can stop the running of the statute "by applying to the courts to have the right of the public tested, or within that time he may close the land against the public use." Not all physical action will toll the statute. The period is started anew only by action that "close[s] the land against the public use."

■ It is unnecessary to decide whether plaintiff's physical actions were of the character necessary to start the statute running anew. The essential maintenance and use of the road began by 1962. Plaintiff waited more than fourteen years before filing suit against the townships in November 1976. The physical actions relied on by plaintiff occurred in the early 1960's. Since the record discloses no evidence of physical action in the six years prior to the commencement of this action that was either intended to or sufficient to close the land against the public use, the six-year requirement of § 160.05, subd. 1, was satisfied.

■ 5. The trial court ruled that establishing a road pursuant to § 160.05, subd. 1, constituted a taking of property that required compensation. As a result plaintiff was awarded damages and Arago Township was charged with costs incurred in fixing damages.

The award of damages was not warranted. Section 160.05, subd. 1, provides no method by which government can *take* property. The statute, rather, provides a substitute for the common-law creation of highways by prescription or adverse use. *Barfnecht v. Town Board of Hollywood Township,* 304 Minn. 505, 506, 232 N.W.2d 420, 422 (1975). During the running of the six-year statute, the township and the public are adverse users and, at any time during that period, the landowner may seek damages for trespass, he may bar users from the property, or he may force the township, if it wishes to continue to use his property, to condemn it and pay compensation. After six years have passed, however, he is estopped from asserting those rights. The township and the public acquire rights not because they take them, but because the landowner forfeits them by failing to act within the prescribed period.

Moreover, so long as a reasonable time and method exist for obtaining compensa-

4. When statutory language has left room, we have not required such roads to rigidly conform to the town line. In *Skrove v. Towns of Belmont and Christiania,* 154 Minn. 118, 191 N.W. 584 (1922), for example, we characterized as a town line road under the existing statute, a road that varied as much as 500 feet from the actual town line.

tion or other appropriate relief—and this is supplied by the six-year term—an affected property owner has no complaint if his request for relief is held barred by long acquiescence and laches or by the running of a statute of limitations. *Kaukauna Water Power Co. v. Green Bay & Miss. Canal Co.,* 142 U.S. 254, 280–81, 12 S.Ct. 173, 35 L.Ed. 1004 (1891); *Jacobosky v. Town of Ahnapee,* 244 Wis. 640, 646, 13 N.W.2d 72, 75 (1944). *See also Krambeck v. City of Gretna,* 198 Neb. 608, 614, 254 N.W.2d 691, 695 (1977).

■ 6. Finally, in the alternative, plaintiff asked the trial court to compel the vacation of the road under authority of Minn.Stat. § 164.07 (1978). Section 164.07, subds. 1, 2, directs a town board to act on petitions regarding township roads when they are signed by eight voters of a specified class. Plaintiff's petition initially included the required signatures. However, before the board either acted or was required to act by Minn.Stat. § 164.07, subd. 2 (1978), three signers requested that their names be withdrawn. The town board was constrained to give these requests effect. *In re Meyer,* 278 Minn. 20, 30, 152 N.W.2d 778, 784 (1967); *Domeier v. Golling,* 243 Minn. 237, 241, 67 N.W.2d 898, 901 (1954). Following these withdrawals the petition contained fewer than the required number of signatures and the township board was without authority to act. Likewise the district court had no authority to intervene.

The award of damages and appraiser fees is reversed and the case is remanded with directions to enter judgment for defendants.

TODD, J., took no part in the consideration or decision of this case.