RAVENNA TOWNSHIP, Respondent,

v.

Jon R. GRUNSETH and Katharine Grunseth, Appellants.

No. 51461.

Supreme Court of Minnesota.

Dec. 17, 1981.

Lindquist & Vennum and Richard D. McNeil, Minneapolis, for appellants.

Moratzka, Dillon & Kunkel and Timothy D. Moratzka, Hastings, for respondent.

AMDAHL, Justice.

This is an appeal from the judgment of the Dakota County District Court in favor of respondent, and its order denying appellants' motion for a new trial or amended findings of fact. The action was brought by Ravenna Township permanently to enjoin appellants from interfering with what the Township contended was a public road within the meaning of Minn.Stat. § 160.05,

subd. 1 (1980).[1] The court, following trial, entered findings of fact, conclusions of law, and an order for judgment in favor of respondent based on its ruling that there is a township public road running from County State Aid Highway 54 to the Vermillion River in the vicinity of the section line between sections 9 and 16, Ravenna Township. Because the road was public, the court concluded that appellants had no right to obstruct its use. The court also ruled that the Marketable Title Act, Minn. Stat. § 541.023 (1980),[2] did not bar respondent's claim to the road. We reverse.

The two-rutted trail or road in dispute is approximately one-half mile in length and runs roughly east and west from County Road 54 to the Vermillion River where it comes to a dead end. The trail measures 7 to 9 feet in width at various points. The existence of the trail dates back to 1873, as evidenced by a survey commissioned by Ravenna Township that was filed in the County Surveyors Office in 1873. In the early 1900's the trail was used by farmers to haul crops and livestock. From the middle 1930's until recent years, the trail was used by fishermen and hunters.

The Blackbird Estates housing development, in which the Grunseths reside, consists of a string of lots along the west bank of the Vermillion River where the river runs north and south through Dakota County. The development was platted in 1971 by Earle Almquist, a long-time area farmer. The Grunseth lot is the southernmost lot in the development. The southern boundary of the Grunseth lot is an east-west line that separates section 9 to the north from section 16 to the south. It is undisputed that the Grunseth lot lies entirely within section 9.

Following Earle Almquist's development of the Blackbird Estates in 1971, the lot now owned by the Grunseths was sold in 1973 by Mr. Almquist to Charles Muelder. Muelder sold the property to the Grunseths by warranty deed in 1978. At the time the Grunseths purchased their property, the trail was posted with "keep out" and "no trespassing" signs every 30 or 40 feet. Muelder told Mr. Grunseth that Muelder controlled access down the trail. Indeed, Muelder instituted a permit system in 1973 by which he limited access to persons to whom he had issued a permit.

Prior to purchasing the property, Mr. Grunseth was told by a real estate agent that the trail was a private road. Grunseth testified that he saw nothing about the trail to suggest that it was a public road. A title search conducted by the Grunseths' attorney prior to the purchase did not disclose any dedications or easements other than a power line easement. Respondent sought

1. Minn.Stat. § 160.05, subd. 1, provides in part:
   When any road or portion thereof shall have been used and kept in repair and worked for at least six years continuously as a public highway, the same shall be deemed dedicated to the public to the width of two rods on each side of the center line thereof and be and remain, until lawfully vacated, a public highway whether the same has ever been established as a public highway or not * * *.

2. Minn.Stat. § 541.023, subd. 1, provides:
   As against a claim of title based upon a source of title, which source has then been of record at least 40 years, no action affecting the possession or title of any real estate shall be commenced by a person, partnership, corporation, state, or any political division thereof, after January 1, 1948, to enforce any right, claim, interest, incumbrance or lien founded upon any instrument, event or transaction which was executed or occurred more than 40 years prior to the commencement of such action, unless within 40 years after such execution or occurrence there has been recorded in the office of the county recorder or filed in the office of the registrar of titles in the county in which the real estate affected is situated, a notice sworn to by the claimant or his agent or attorney setting forth the name of the claimant, a description of the real estate affected and of the instrument, event or transaction on which such claim is founded, and stating whether the right, claim, interest, incumbrance or lien is mature or immature. If such notice relates to vested or contingent rights claimed under a condition subsequent or restriction it shall affirmatively show why such condition or restriction is not, or has not become nominal so that it may be disregarded under the provisions of Minnesota Statutes 1945, Section 500.20, Subdivision 1.

to prove that the Grunseths had notice at the time of purchase that the road was public, relying primarily on public user and on a 1978 Dakota County highway map that showed the road as 181st St. E.

In winter of 1978–1979, the trail was used occasionally by ice fishermen who generally asked for and received the Grunseths' permission. During spring and summer of 1979 the Grunseths were bothered by a number of incidents involving people who used the trail to roam around their property at night or who dumped garbage in the area. After one such incident the Grunseths consulted with John McKane, an adjoining landowner, and with his concurrence the Grunseths erected a log gate across the trail and issued a number of keys to townspeople to whom they were willing to grant access.

The Township of Ravenna brought this action against the Grunseths for a permanent injunction against their interfering with the use of the road, alleging that the road had been dedicated to public use pursuant to Minn.Stat. § 160.05, subd. 1 (1980). Appellants' answer denied that the road had been dedicated to public use under section 160.05, subd. 1, and further alleged that respondent's claim was barred by the Marketable Title Act. After a 3-day court trial, the trial court ordered judgment for respondent and rejected the defenses asserted by appellants.

The issues raised on this appeal are:

(1) Does the evidence support a finding that the road has been "used and kept in repair and worked for at least 6 years continuously" so as to be deemed a public road under Minn.Stat. § 160.05, subd. 1?

(2) Did the trial court err in ruling that the Marketable Title Act does not apply to claims that a road is a "public road"?

■ 1. In order to prove dedication of a road by statutory user under Minn.Stat. § 160.05, subd. 1 (1980), one must show (1) use by the public and (2) maintenance at the expense of an appropriate agency of government (3) over a continuous period of at least 6 years. *Shinneman v. Arago*

*Township*, 288 N.W.2d 239, 242 (Minn.1980). Respondent had the burden of proof on this issue, *Moritz v. Town of Burns*, 292 Minn. 165, 167, 193 N.W.2d 620, 621 (1972), although it was not required to show that it worked every part of the road during the 6 years or even that it worked some part of the road every year during the 6 years. *Leeper v. Hampton Hills, Inc.*, 290 Minn. 143, 146, 187 N.W.2d 765, 767–68 (1971). The trial court found that "prior to defendants acquiring any ownership of any land in the area this road had been used, kept in repair, and worked for more than six years continuously as a public highway." The question of public dedication is one of fact, and the trial court's determination on the matter will not be reversed unless it is clearly erroneous. *Wojahn v. Johnson*, 297 N.W.2d 298, 307 (Minn.1980). Taking the view of the evidence most favorable to the findings of the trial court, we turn to a consideration of whether the evidence was sufficient to show the establishment of a public road by statutory user pursuant to section 160.05.

■ The evidence leaves no doubt, and appellants do not seriously contest, that the public use requirement of section 160.05, subd. 1, has been satisfied. One can establish public user by showing that a comparatively small number of persons used the road for 6 years continuously. *Leeper v. Hampton Hills, Inc.*, 290 Minn. 143, 146, 187 N.W.2d 765, 768 (1971). While use of the disputed road was not extensive, there was ample evidence that the road was used for many years by persons seeking access to the river for purposes of farming and recreation. That is sufficient.

■ The more seriously contested issue at trial was whether the road was "[maintained] at the expense of an appropriate agency of government" over a 6 year period. This court has stated that to satisfy the requirements of section 160.05, subd. 1, the "maintenance must be of a quality and character appropriate to an already existing public road." *Shinneman v. Arago Township*, 288 N.W.2d 239, 242 (Minn.1980). Evidence adduced at trial indicated that the

township's intent was to maintain the trail as a "low profile road." This maintenance did not include plowing snow in the winter or mowing grass in the summer. The township never installed culverts or ditches. Although sheriff's deputies make once-a-shift patrols of Blackbird Trail, a street that runs through the Blackbird Estates development, they normally do not patrol the disputed trail in the absence of a beer party call or hunter complaint call. John McKane, who has owned land adjoining the trail for 24 years, testified that during that time he was aware of only one instance of maintenance by the township, which consisted of the placing of some gravel at the river end of the trail. McKane also stated that the township did not clean up litter that was occasionally thrown alongside the trail. Expert testimony from a soil engineer who studied five soil samples taken from the trail failed to reveal any evidence of maintenance in recent years.

Respondent relied primarily on evidence that showed the road to have been graded on two occasions and that the township incurred expenses on two other occasions for graveling. Respondent introduced several exhibits at trial showing check stubs that represented expenses incurred for maintenance of town roads, but save for one stub, none of these expenses was shown to be related to the road in dispute. There was no other evidence of maintenance by public authorities, although private citizens who were either users of the road or adjoining landowners cared for the road from time to time. Evidence of maintenance by these private citizens is unpersuasive because it fails to meet the requirement set out in *Shinneman* that the maintenance be "*at the expense* of an appropriate agency of government." 288 N.W.2d at 242 (emphasis added).

We find the evidence of maintenance in this case to be substantially less than that present in other cases this court has decided under section 160.05. For example, in *Leeper v. Hampton Hills, Inc.*, 290 Minn. 143, 187 N.W.2d 765 (1971), we sustained a trial court finding that a road was dedicated by statutory user where it had been "graveled and 'crowned up,'" snowplow crews had worked on the road in winter, and "the road was graded, weeds were mowed, and culverts were installed" during an 8 year period. *Id.* at 147, 187 N.W. 2d at 768. Similarly, in *Anderson v. Birkeland*, 229 Minn. 77, 38 N.W.2d 215 (1949), a jury verdict of statutory user was upheld where the road had been graveled, resurfaced and oiled, and guard posts had been installed within a period of 4 or 5 years. *Id.* at 81, 38 N.W.2d at 218.

While the degree of maintenance by respondent township may be consistent with its intent that the road maintain a "low profile," it nevertheless falls short of the indicia of road maintenance "as that term is normally used in conjunction with road care." *Township of Sterling v. Griffin*, 309 Minn. 230, 237, 244 N.W.2d 129, 134 (1976). We therefore conclude that the decision of the trial court was clearly erroneous in finding that the maintenance requirement of section 160.05 was satisfied.[3]

█ 2. The second question raised by this appeal is whether the trial court erred in holding that the Marketable Title Act

---

3. Appellants also argue that the trial court applied section 160.05 beyond constitutional limitations imposed by this court in *Barfnecht v. Town Board of Hollywood Township*, 304 Minn. 505, 232 N.W.2d 420 (1975). In *Barfnecht*, we held that the portion of section 160.-05 that dedicates to the public "two rods on each side of the centerline" was an unconstitutional taking to the extent that it permitted a township to *widen a road* acquired by statutory user beyond the width actually acquired by such use. *Id.* at 508, 232 N.W.2d at 422. Appellants assert that because the location of the road was too ill-defined and uncertain to be specified, the effect of applying section 160.05 would be to create an unbounded public claim of a right to travel over appellants' property.

Because we hold that respondent township failed to establish the existence of a public road by statutory dedication, we need not address the question whether section 160.05 was unconstitutionally applied. We note in passing, however, that the township did not seek to take appellants' property by widening the road, but merely sought to enjoin the blockade of what it deemed to be a public road. *Barfnecht* is distinguishable on that ground.

does not apply to claims that a road has been established by statutory dedication. Consistent with our decision in *Township of Sterling v. Griffin*, 309 Minn. 230, 244 N.W.2d 129 (1976), we hold that the trial court erred in not applying the Marketable Title Act to respondent's claim. We stated unequivocally in *Township of Sterling* that "town roads are not exempt from the application of the Marketable Title Act." *Id.* at 235, 244 N.W.2d at 133. The critical fact in this case is that respondent's claim to the road is unrecorded. Therefore, subdivision 5 of the Act[4] operates to impose a "conclusive presumption" of abandonment which can be overcome, under subdivision 6,[5] only by proof of "possession" on the part of the township that is "present, actual, open, and exclusive" and not "equivocal or ambiguous." *Township of Sterling, id.* at 236, 244 N.W.2d at 133; *B. W. & Leo Harris Co. v. City of Hastings*, 240 Minn. 44, 59 N.W.2d 813 (1953).

In *Township of Sterling*, the township brought an action to enjoin defendant landowners from impeding traffic on a two-rutted road, a portion of which ran across defendants' property. The road was established in 1889 by order of the Town Board. The town had done some "minimal grading" and "slight ditching" to the road, but the road was not maintained as a roadway "as that term is traditionally used in conjunction with road care." 309 Minn. at 237, 244 N.W.2d at 134. Nearby road checks stopped at and did not proceed down the disputed road. The same was true of snowplowing. Based on this evidence, we upheld the trial court's ruling that even though the town road was legally established and had never been abandoned under traditional laws of abandonment, the road was presumed abandoned under subdivision 5 of the Marketable Title Act because the town had failed to record its claim with the register of deeds. We further held that because the evidence was insufficient to provide the substitute notice of possession contemplated by subdivision 6 of the Act, the township's interest in the road was barred. The evidence of possession in the instant case is no more weighty on behalf of the respondent.

We therefore hold, consistent with *Township of Sterling*, that respondent's possession of the road was not sufficient under subdivision 6 of the Marketable Title Act to overcome the conclusive presumption of abandonment imposed by subdivision 5.[6] We do not imply by our decision that respondent would have prevailed by establishing possession under subdivision 6. Respondent's claim is also rejected because of its failure to establish the existence of a public road under section 160.05, subd. 1.

Reversed.

SHERAN, C. J., took no part in the consideration or decision of this case.

---

4. Minn.Stat. § 541.023, subd. 5 (1980), provides:

> Any claimant under any instrument, event or transaction barred by the provisions of this section shall be conclusively presumed to have abandoned all right, claim, interest, incumbrance or lien based upon such instrument, event or transaction; and the title in the name of any adverse claimant to the real estate which would otherwise be affected thereby shall not be deemed unmarketable by the reason of the existence of such instrument, event or transaction; it being hereby declared as the policy of the state of Minnesota that, except as herein provided, ancient records shall not fetter the marketability of real estate.

5. Minn.Stat. § 541.023, subd. 6, provides in part that "This section shall not * * * bar the rights of any person, partnership or corporation in possession of real estate."

6. Respondent asserts that the holding in *Township of Sterling*, should not be extended to a road established by common-law dedication. Since the trial court did not find a common-law dedication, respondent's argument on that issue is inapposite. Even assuming respondent could establish a common-law dedication, *see Wojahn v. Johnson*, 297 N.W.2d 298 (Minn. 1980), we feel that the Marketable Title Act would compel us to reach the same result as that stated above.