**TOWN OF BELLE PRAIRIE, et al., Respondents,**

v.

**David KLIBER, et al., Appellants.**

No. C1–89–598.

Court of Appeals of Minnesota.

Nov. 28, 1989.

---

Peter L. Vogel, Rosenmeier, Anderson & Vogel, Little Falls, for respondents.

Stephen P. Larson, Larson, Johnson & Peters, P.A., Long Prairie, for appellants.

Heard, considered and decided by RANDALL, P.J., and FOLEY and FLEMING *, JJ.

## OPINION

FOLEY, Judge.

Respondents Town of Belle Prairie and Town of Little Falls brought a declaratory judgment action seeking a determination that a road lying on the common boundary line between the townships was a public road. Respondents also sought to enjoin appellants David, Richard, and Jerry Kliber from blocking the road. The trial court granted judgment to respondents, and the Klibers appeal. We affirm.

## FACTS

On July 16, 1918, pursuant to a Supervisors Road Order, the Townships of Little Falls and Belle Prairie established a road running east and west on a common boundary line between the two townships. The road begins at the Northeast corner of the North half of the Northwest Quarter of Section 12 in Little Falls Township and runs west for a distance of approximately two miles to the Northwest corner of the North half of the Northeast Quarter of Section 10 of the Little Falls Township. The disputed portion of this road begins at the northwest corner of section 12 and runs east to the end of the road.

Jerry Kliber and his father George purchased the North half of the Northwest Quarter of Section 12 on September 25, 1964. The disputed road runs along the north edge of this property.

During the early 1930's, a man named Givens lived in a home at the east end of the disputed road. In 1937, Givens sold his farm to Arthur Hunnel, who lived there until 1945. According to Art Hunnel, Jr., the road was more like a trail when his family moved to the property. Maintenance of the road by the township consisted of dragging the road a couple of times a year to level it off. The road was not plowed in the winter. Hunnel testified that

other families in the area also used the road.

After the Hunnels moved away, the township no longer maintained the road, although regular road inspections were performed. Use was made of the road between the 1950's and 1960's by hunters, residents in the area, and law enforcement officials. Gene Young, a resident of Little Falls Township, testified that his family used the road for hunting from 1955 to 1964. Art Tonder, an area game warden from the early 1960's to 1981, used the road to patrol the area for deer shiners. Other residents of the area used the road to fix fence and haul wood. Cleo Meyer, a Little Falls Township resident, testified that he issued a burning permit to an area resident who used the road to get access to his property. Meyer also testified that he received and investigated a complaint regarding trash along the road. There was further testimony that snowmobilers used the road in the mid 1960's.

At some point, a cable or netting was placed across the west end of the disputed portion of the road at the northwest corner of section 12. Matt Simon, who lived on neighboring property from 1951 to 1953, recalled a cable across the road when he lived in the area. Art Tonder, Joseph Okroi, an area resident, and several other individuals also testified about a cable. Richard LeMieur, the owner of property adjoining the Klibers' property to the east, pushed trees across the road to stop motorcycles from coming through the area and damaging equipment on his property.

LeMieur used the road for hauling out gravel and hot mix from gravel pits on his property. In 1974, he requested the township to upgrade the road. A deal was struck whereby LeMieur would provide the labor and the township would pay for the material to improve the road. LeMieur testified that he widened and graded the road pursuant to the agreement. LeMieur further stated that he hauled hot mix along the road within the last eight or nine years.

Sometime in 1974, a gate with a lock on it was placed at the western end of the

* Acting as judge of the Court of Appeals by ap-      pointment pursuant to Minn. Const. art. 6, § 2.

disputed portion of the road. Tonder testified that he got a key from LeMieur to open the gate and patrol the area. There was also testimony that the lock was cut during the hunting season. The Town Boards were aware of the presence of the gate and there was testimony that inspections by the township ended after the locked gate was put in. Joseph Okroi testified that he continued to use the road to check fence after the gate was put in.

The trial court determined that the Klibers failed to prove the elements of the Marketable Title Act because they made no showing of title to their property. After finding that use of the road by the public was shown from 1920 through 1974 and on occasion after 1974 to the present, the trial court determined that the road in dispute was a public road.

The Town Road Order was recorded by the township in 1983.

## ISSUES

1. Did the trial court err in determining that appellants were not entitled to invoke the provisions of Minn.Stat. § 541.023, the Marketable Title Act?

2. Did the trial court err in determining that the road was a public road?

## ANALYSIS

Judgment in this case was entered on January 5, 1989 and again on January 9, 1989. On February 24, 1989, the Klibers brought a motion for new trial or amended findings of fact. On April 3, 1989, before the motion was heard, the Klibers appealed the judgment.

█ The filing of a notice of appeal deprives the trial court of jurisdiction to rule on the post-trial motion. *Gummow v. Gummow*, 356 N.W.2d 426, 428 (Minn.Ct. App.1984); *Evans v. Blesi*, 345 N.W.2d 775, 780 (Minn.Ct.App.1984). The original judgment is the appropriate judgment for review.

█ The Klibers' notice of appeal states that they are appealing from the January 9, 1989 judgment. The Klibers should have appealed from the first judgment. How-

ever, as both judgments were attached to the notice of appeal and the appeal was timely, we construe it liberally. *See Kelly v. Kelly*, 371 N.W.2d 193 (Minn.1985).

Findings of fact made by the trial judge sitting without a jury shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. *See* Minn.R.Civ.P. 52.01. Our consideration on appeal is limited to whether the evidence sustains the findings of fact and whether the findings sustain the conclusions of law and the judgment. *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976). A trial court's conclusions of law are not binding on the appellate court. *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 582 (Minn. 1977).

█ 1. The Marketable Title Act (MTA) "was designed to be invoked as a defense in a situation where a party claims title to property and another party asserts a hostile claim to the same property." *Padrnos v. City of Nisswa*, 409 N.W.2d 36, 38 (Minn. Ct.App.1987), *pet. for rev. denied* (Minn. Sept. 23, 1987). Two basic requirements are necessary to extinguish an interest in land under the MTA.

> First, the party desiring to invoke the statute for his own benefit must have requisite "claim of title based upon a source of title, which source has then been of record at least 40 years," (i.e., a recorded fee simple title). Secondly, the person against whom the act is invoked must be one who is "conclusively presumed to have abandoned all right, claim, interest * * *" in the property (subd. 5).

*Wichelman v. Messner*, 250 Minn. 88, 112, 83 N.W.2d 800, 819 (1957).

Only those who possess a title which complies with the conditions of the statute are entitled to invoke its aid. *Id.* at 106, 83 N.W.2d at 816. The term "source of title" refers to *"recorded fee simple ownership, an estate which under § 500.02 may be 'defeasible or conditional.'"* *Id.* The Klibers submitted no evidence of fee simple

ownership. Even if we accept respondents' concession at oral argument that the Klibers' claim of title is based on a tax title recorded in 1964, this does not constitute a concession that the Klibers owned in fee simple. Under *Wichelman,* absent a showing of fee simple ownership, the Klibers are not entitled to invoke the provisions of the MTA.

Although the townships failed to record their claim within the time period prescribed by the MTA, we do not consider whether the conclusive presumption of abandonment is overcome by a showing of open and exclusive possession under subdivision 6 of the MTA, because the Klibers are not entitled to invoke the aid of the statute.

2. Although the thrust of the case at trial dealt with the applicability of the MTA, we are compelled to examine the evidence to determine if a public road was established by statutory user. We conclude the evidence is sufficient to support such a finding.

■ While the trial court did not decide the case under Minn.Stat. § 160.05 (1988), the evidence supports a finding that the disputed road is a public road under the criteria of this provision.

When any road or portion of a road has been used and kept in repair and worked for at least six years continuously as a public highway by a road authority, it shall be deemed dedicated to the public to the width of the actual use and be and remain, until lawfully vacated, a public highway whether it has ever been established as a public highway or not.

The requirements of the statute are met with a showing of use by the public and maintenance at the expense of an appropriate agency of government over a continuous period of at least six years. *Shinneman v. Arago Township,* 288 N.W.2d 239, 242 (Minn.1980) (citing *Anderson v. Birkeland,* 229 Minn. 77, 80, 38 N.W.2d 215, 218 (1949)).

■ Public use may be established by showing that a comparatively small number of persons used the road for six years continuously. *Leeper v. Hampton Hills,*

*Inc.,* 290 Minn. 143, 146, 187 N.W.2d 765, 768 (1971). Here, the evidence establishes such use. Art Hunnel testified that in 1937 his family moved to a homestead on the property at the end of the disputed road. In addition to use by his family, the road was used by individuals named Pegland, LeBlanc, and Lloyd Anderson. The Hunnel family remained on the farm and used the road until the farm was foreclosed in 1945.

■ To satisfy the maintenance requirement, the "maintenance must be of a quality and character appropriate to an already existing public road." *Shinneman,* 288 N.W.2d at 242. It is not necessary that every part of a road be worked at government expense or that any particular part receive attention every year of the six year period. *Leeper,* 290 Minn. at 146, 187 N.W.2d at 767–68. In *Leeper,* the trial court's finding of dedication by statutory user was sustained where the evidence showed that the road had been "graveled and 'crowned up,'" snowplow crews had worked on the road in winter, and "the road was graded, weeds were mowed, and culverts were installed" during an eight year period. *Id.* at 147, 187 N.W.2d at 768.

■ In the present case, Art Hunnel testified that in the spring the township would come up one or two times to drag the road and level it off. Robert Eix, the individual who formally maintained the road for Little Falls Township, testified that he maintained the road in the 1940's and early 1950's. Eix dragged the road in the summer, which was typical of the maintenance at that time. He specifically remembered the disputed portion of the road because he would go into Art Hunnel's yard to turn around while doing the maintenance. Additionally, minutes from the township meetings in 1941 show bills allowed for road work on the town line road.

The amount of maintenance on the road in this case is more than was performed in *Ravenna Township v. Grunseth,* 314 N.W.2d 214 (Minn.1981), where the evidence was held not to support a finding that the road was a public road by statutory dedication. In *Ravenna Township,*

there was no plowing in the winter or mowing grass in the summer. An owner of land adjoining the trail for 24 years testified that he was aware of only one instance of maintenance by the township in that period of time. The township introduced check stubs representing expenses incurred for road maintenance, but only one stub was shown to be related to the road in dispute. The court stated that while the degree of maintenance might be consistent with the intent that the road maintain a low profile, it nevertheless fell short of the indicia of road maintenance as that term is normally used. *Id.* at 218. In contrast, we conclude that the evidence in the present case is sufficient to show maintenance of the road from the time the Hunnels resided in the area through the early 1950's.

We further note that the Klibers pleaded abandonment as an affirmative defense. In *Rein v. Town of Spring Lake*, 275 Minn. 79, 83, 145 N.W.2d 537, 540-41 (1966), the supreme court held that mere nonuser for any length of time does not operate as abandonment of a street dedicated to public use pursuant to statute. To constitute abandonment, long-continued nonuser must be accompanied by an affirmative act indicative of an intent to abandon. *Id.* In determining that nonuser alone was insufficient, the court stated:

> The rights of the public are seldom guarded with the degree of care with which owners of private property guard their rights, and, consequently, acts or omissions which might weigh heavily against private persons cannot always be given the same force against the public.

*Id.* (quoting *Parker v. City of St. Paul*, 47 Minn. 317, 318, 50 N.W. 247, 248 (1891)). While the trial court in the present case made no finding dealing with abandonment, it is implicit by the findings set forth that the claim of abandonment was denied.

## DECISION

We affirm the trial court's determination that the Klibers are not entitled to invoke the provisions of the Marketable Title Act. We also affirm the determination that the road in dispute is a public road, although we do so on the grounds that public use of the road was established by statutory user under Minn.Stat. § 160.05, subd. 1.

Affirmed.